[S. F. No. 12777. In Bank.—April 29, 1929.]

R. W. HURST, Respondent, v. CITY OF BURLINGAME (a Municipal Corporation) et al., Appellants.

Fletcher Cutler and John F. Davis for Appellants.

Kirkbride & Gordon for Respondent.

SHENK, J.—This is an appeal from a judgment in favor of the plaintiff in an action to enjoin the enforcement of a zoning ordinance of the City of Burlingame.

The plaintiff is the owner of lots 21 and 22 in block 20 of the Lyon and Hoag Subdivision of the City of Burlingame. The defendants are the City of Burlingame, its board of trustees and the executive officers thereof. At a special election held for that purpose on September 17, 1923, the electors of said city, acting under the initiative provisions of the constitution and laws of the state, approved an ordinance, number 162, and entitled "An ordinance regulating and establishing the location of residences, apartments, trades, industries and business buildings, and establishing the boundaries for said purposes, providing for the creation of a city planning commission, and providing penalties for the violation of its provisions." For more than six years prior to the filing of the complaint on February 5, 1926, the plaintiff was continuously engaged in the business of the retail sale and distribution of lumber, mill work and other building materials in said city. The property described in the complaint and owned by the plaintiff has been and is improved by fencing the same and the construc-

tion thereon of driveways, platforms and other structures, adapting the same for use as a lumber storage yard and as a place for the storage and sale of lumber and other building materials. The zoning ordinance in question so classified the plaintiff's property as to prohibit the use thereof for any purpose except the erection, alteration and maintenance of a building or buildings pertaining to the housing of persons and places of abode. The purpose of the ordinance was and its effect, if valid, is to prohibit the use of said property for commercial purposes, a use to which the plaintiff is devoting the same. The city authorities threatened to prosecute the plaintiff for alleged violation of said ordinance, whereupon this action was brought.

The complaint alleged that the entire ordinance was and is invalid for failure of the city authorities to comply with the requirements of the Zoning Act of 1917 (Stats. 1917, p. 1419), and further by reason of the inclusion therein of section 12, which provides for a reclassification of any of the property in the city only with the consent of a majority of the owners of property within 500 feet outside of the exterior boundaries of the area sought to be reclassified, and that with such consent and not otherwise the board of trustees would submit the question of such reclassification to a vote of the people of the city at the next general or a special municipal election. The complaint alleges in detail the situation of the property surrounding the lots in question and in the same neighborhood and the nature and character of the use thereof. It was alleged and proved that immediately to the west of the plaintiff's property, across an intervening street, is the right of way of the main line of the Southern Pacific Railroad, over which more than seventy-three regularly scheduled passenger and freight trains are operated daily; that along the easterly boundary of said right of way for several blocks northerly and southerly are spur-tracks, railroad structures and business establishments, all of which property is by said ordinance zoned for commercial purposes; that immediately to the north of plaintiff's property is lot 20 in block 20, which is, and was at the time of the approval of said ordinance, improved and occupied wholly for business purposes; that to the south of the plaintiff's property is block 19, which was and is wholly used for business purposes, including a lumber-

yard, material distributing yard, storage tanks, gravel bunkers and elevators, and an oil distributing plant, and that just to the east of said property are three unoccupied lots.

In response to appropriate issues raised by the pleadings and the proof adduced the court found that the provisions of the Zoning Act were not complied with in the enactment of said ordinance. It was also found that the zoning of the plaintiff's property for residential and apartment house purposes and the restriction against the use of said property for commercial purposes was arbitrary, oppressive, discriminatory and void.

The first and a vital point raised on the appeal is whether the conceded failure of the city to comply with the requirements of the Zoning Act renders the ordinance void in its entirety.

The City of Burlingame is a city of the sixth class organized and existing under and by virtue of the provisions of the general Municipal Corporations Act (Stats. 1883, p. 93, and acts amendatory thereof and supplemental thereto). As such the city is limited in the exercise of its powers by the constitution and general laws. It has only the powers expressly conferred and such as are necessarily incident to those expressly granted or essential to the declared objects and purposes of the municipal corporation. Its powers are strictly construed and any fair, reasonable doubt concerning the exercise of a power is resolved against the corporation. These rules are elementary. (*Egan* v. *San Francisco*, 165 Cal. 576 [Ann. Cas. 1915A, 754, 133 Pac. 294]; 18 Cal. Jur., pp. 797, 801, and cases cited.) Section 11 of article XI of the constitution contains a broad grant of police power to municipalities. A zoning ordinance falls within the classification of police measures. (*Miller* v. *Board of Public Works,* 195 Cal. 477 [38 A. L. R. 1479, 234 Pac. 381]; *Village of Euclid* v. *Amber Realty Co.,* 272 U. S. 365 [54 A. L. R. 1016, 71 L. Ed. 303, 47 Sup. Ct. Rep. 114].) But an ordinance adopted by a city organized under general law is subject to and controlled by general law. (Const., art. XI, sec. 11; *Boyd* v. *City of Sierra Madre,* 41 Cal. App. 522 [183 Pac. 230].) The Zoning Act of 1917 is a general law of the state and the method prescribed by that law for the enactment of a zoning ordinance is bind-

ing on the City of Burlingame. Section 1 of the act contains the general grant of power to enact a zoning ordinance. Section 2 provides, among other things, that in the enactment of such an ordinance the legislative body of the city "shall give reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the direction of building development in accord with a well-considered plan." Section 3 enjoins on the legislative body reasonable regard for the value of the land and the uses to which it may be put to the end that regulations may promote public health, safety and welfare. Section 4 provides that in municipalities having a planning commission the legislative body shall require said commission to recommend the boundaries of the districts to be established and the appropriate regulations and restrictions to be enforced therein; that the planning commission shall make a tentative report and hold public hearings thereon at such times and places as the legislative body shall require before submitting its final report; that the legislative body "shall not thereafter determine the boundaries of any district or impose any regulations until after the full report of the city planning commission is filed with the city clerk"; that upon receiving such report the legislative body "shall afford persons particularly interested, and the general public, an opportunity to be heard, at a time and place to be specified in a notice of hearing to be published in a newspaper to be designated for that purpose. Said newspaper to be a local newspaper, if there be one, otherwise a newspaper of general circulation within the municipality, and to be published not less than three times in any daily, or not less than once in any other newspaper of general circulation within the municipality, and, within the week within which said meeting is to be held." Section 5 provides that in municipalities where there is no planning commission the legislative body may proceed in the manner provided in section 4 and "shall make the tentative report, arrange for and hold such public hearings, make such final report and afford all persons particularly interested and the general public, an opportunity to be heard at the time and place and in the manner prescribed in section four hereof."

It appears beyond dispute in this case that there was not, at the time the ordinance under attack was prepared and submitted to a vote of the electors of Burlingame, a regularly constituted planning commission. It is also an undisputed fact that there was an entire failure on the part of the legislative body of the city and of the electors of the city to comply with the requirements of sections 4 and 5 of the Zoning Act. It appears that factional differences developed in said city with reference to a comprehensive zoning plan. One faction furthered one plan and caused an ordinance to be drafted in conformity therewith. Another group furthered another and different plan and likewise caused the same to be incorporated in a proposed ordinance. Each proposed ordinance was incorporated in an initiative petition. These petitions were signed by the requisite number of electors and upon certification of their sufficiency they were submitted to the legislative body in pursuance of the initiative law with the request that said ordinances be passed by the legislative body without alteration or amendment or that the legislative body call a special election and submit the approval or rejection of said ordinances to a vote of the electorate of the city. The board of trustees took no official action with reference to the enactment of said ordinances, except to call the special election as it felt itself bound to do under the law relating to the initiative. At the special election held on September 17, 1923, the ordinance now under attack was approved and the other proposed ordinance was disapproved.

It is the established law of this state that an ordinance proposed by the electors of a county or of a city in this state under the initiative law must constitute such legislation as the legislative body of such county or city has the power to enact under the law granting, defining and limiting the powers of such body. (*Newsom* v. *Board of Supervisors*, 205 Cal. 262 [270 Pac. 676]; *Galvin* v. *Board of Supervisors*, 195 Cal. 686 [235 Pac. 450]. See, also, *Hopping* v. *Council of City of Richmond*, 170 Cal. 605 [150 Pac. 977]; *Hyde* v. *Wilde*, 51 Cal. App. 82 [196 Pac. 118]; *State* v. *White*, 36 Nev. 334 [50 L. R. A. (N. S.) 195, 136 Pac. 110].) It is too clear for controversy that if the board of trustees of the City of Burlingame had adopted the ordinance in ques-

tion without compliance with the requirements of the Zoning Act above outlined said ordinance would have been inoperative and void. It is equally clear that the infirmity would not be cured by the purported adoption of the ordinance by the electors of the city under the initiative law. The zoning law vests in the legislative body of the city broad discretionary power, but when the method for the exercise of the power is prescribed by the statute such method is the measure of the power to act. (*Zottman* v. *San Francisco,* 20 Cal. 96 [81 Am. Dec. 96].) The legislature may have considered, and very properly so, that in the enactment of a zoning ordinance property rights might be seriously affected. While the detriment flowing from a validly enacted zoning measure would be *damnum absque injuria,* the requirement of notice and hearing provided by the statute may not be treated lightly or at all disregarded. When the statute requires notice and hearing as to the possible effect of a zoning law upon property rights the action of the legislative body becomes *quasi* judicial in character and the statutory notice and hearing then becomes necessary in order to satisfy the requirements of due process and may not be dispensed with.

Whether the requirements of the Zoning Act as to notice and hearing could be complied with in the enactment of an ordinance by the board of trustees pursuant to the demand of the initiative petition that the proposed ordinance be passed without alteration or amendment need not be passed upon. It would seem to be an idle proceeding for the board of trustees, after an initiative petition is presented to it, to enter upon an investigation as to a proper zoning plan, give notice and conduct hearings for the benefit of interested property·owners and the public in general and at the conclusion of its deliberations have no power to change the terms of the proposed ordinance. The initiative law and the zoning law are hopelessly inconsistent and in conflict as to the manner of the preparation and adoption of a zoning ordinance. The Zoning Act is a special statute dealing with a particular subject and must be deemed to be controlling over the initiative, which is general in its scope. ·

The appellants cite and rely upon the case of *Dwyer* v. *City Council,* 200 Cal. 505 [253 Pac. 932], as direct authority for the proposition that the initiative and referendum

law may be applied to zoning ordinances and when so applied the Zoning Act of 1917 would be superseded. The case relied upon is not controlling nor applicable for at least two reasons. The zoning ordinance of the city of Berkeley there involved was adopted by the legislative body of the city pursuant to the provisions of the charter and ordinances of said city specifying the mode and manner for the adoption of such an ordinance. It appeared that the city was operating under a freeholders' charter and had fully complied with the constitution to the end that the matter of zoning was a municipal affair as contemplated by section 6 of article XI of the constitution. The Zoning Act of 1917 was therefore not controlling. It also appeared that the city council had taken all of the requisite preliminary steps in order that the measure might become a valid city ordinance and had actually adopted the same. Its effective date was suspended by the filing of a petition under the law relating to the referendum. The city authorities contended that the referendum did not apply to such an ordinance and this court held that the contention was without merit. The question of the operation of the initiative law to such local legislation was not involved in the Dwyer case and therefore no necessity arose to distinguish between the effectiveness of the initiative and the referendum in zoning cases. If the point were involved it would undoubtedly be conceded that had the board of trustees of the City of Burlingame adopted a zoning ordinance as provided by the statute, its final action would be subject to the referendum provisions of the constitution and laws of the state, for the obvious reason that there is embodied in the enactment of a zoning ordinance such elements of legislative action as to subject the ordinance when adopted to the reserved legislative power of the electors of the city, when properly invoked, to approve or reject it. We therefore conclude that the ordinance under attack is void in its entirety for failure to comply with the requirements of the Zoning Act.

It is contended by the respondent that the entire ordinance is void for the further reason that in section 12 thereof the power to reclassify any of the property in the city is made contingent upon the consent of a majority of the owners of property within five hundred feet of the prop-

erty sought to be rezoned. Such an attempted suspension of legislative power has been held ineffective, and such an attempted delegation of power to be an unauthorized interference with the rights of property owners adversely affected. (*Ex parte Sing Lee,* 96 Cal. 354 [31 Am. St. Rep. 218, 24 L. R. A. 195, 31 Pac. 245], and cases cited.) A late pronouncement on the subject is *State of Washington* v. *Roberge,* 278 U. S. 116 [73 L. Ed. 210, 49 Sup. Ct. Rep. 50] (November 19, 1928). But the invalidity of said section 12 would not necessarily strike down the entire ordinance for the reason that the provisions of said section are readily severable from the remainder of the ordinance and could be eliminated without disturbing the remainder if the latter were otherwise operative.

There is much force in the contention of the respondent that the ordinance, if otherwise valid, is void as to him for the reason, as concluded by the trial court, that the classification of the respondent's property as residence property only was arbitrary, oppressive, discriminatory and void. In addition to the findings and conclusions of the court on the evidence presented, the court also declared with reference to the plaintiff's property: "A mere inspection of the property would present to the dullest of minds the impracticability of maintaining the portion left in this block for residential purposes." An inspection of the record before us leads us to the same conclusion and satisfies us that the question of whether the respondent's property was or was not properly zoned as residential property is not fairly debatable; that no consideration of public health, peace, safety, morals, order or welfare required that the respondent be prohibited from using his property for commercial purposes and that the ordinance, if otherwise valid, would be void as to him. We might well rest our decision on the point last mentioned were it not for the fact that the ordinance is clearly void in its entirety and the city authorities should be so advised.

The judgment is affirmed.

Seawell, J., Curtis, J., Langdon, J., Waste, C. J., Richards, J., and Preston, J., concurred.

Rehearing denied.

Curtis, J., voted for a rehearing.