### ELLIOTT *v.* CITY OF CLAWSON

1. MUNICIPAL CORPORATIONS — ORDINANCES — INITIATIVE — REFERENDUM — CONSTITUTIONAL LAW.

   The Constitution of 1963 does not reserve to the people the power of initiative and referendum with respect to local ordinances (Const, 1963).

2. MUNICIPAL CORPORATIONS — ORDINANCES — INITIATIVE — REFERENDUM — CHARTER — HOME RULE ACT.

   The power of initiative and referendum with respect to municipal ordinances exists only by virtue of the Home Rule Act which permits each city to provide in its charter for initiative and referendum on all matters within the scope of its powers.

3. MUNICIPAL CORPORATIONS — ZONING — ZONING ENABLING ACT — HOME RULE ACT — REFERENDUM.

   Absent any referendum provision in the city zoning enabling act, no referendum could be held on an amended zoning ordinance of defendant city even though its charter contained a general referendary provision authorized by the Home Rule Act where the general referendary provision in defendant's charter imposed no time limit in which a referendum on a proposed ordinance must be brought (MCLA §§ 117.4i, 125, 581 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 38 Am Jur, Municipal Corporations §§ 204–221.
[3, 4] 58 Am Jur, Zoning § 169 *et seq.*

4. ZONING—MUNICIPAL CORPORATIONS—CHARTER—REFERENDUM.

A referendary provision in a city charter which imposes no time limit in which a referendum on a proposed zoning ordinance must be brought, tends to destroy the comprehensiveness and coordination of zoning legislation for if zoning ordinances were subject to such an unlimited time provision, owners or prospective purchasers of real property could not rely upon any zoning ordinances.

Appeal from Oakland, James S. Thorburn, J. Submitted Division 2 April 10, 1969, at Lansing. (Docket No. 5,719.) Decided February 3, 1970.

Complaint by Arthur G. Elliott against the City of Clawson, a municipal corporation, to restrain suspension of an amendatory zoning ordinance. Preliminary injunction granted. George Jafano and other citizens intervened as defendants and appeal. Affirmed.

*S. James Clarkson,* for plaintiff.

*O'Hara, Munde & Hudson,* for intervening defendants.

Before: J. H. GILLIS, P. J., and LEVIN and BRONSON, JJ.

BRONSON, J. Plaintiff is the owner of property located within the city of Clawson, a home-rule city. Before June 6, 1967, plaintiff's property was zoned for single family use. On that date, the city amended its zoning ordinance and rezoned plaintiff's property for the use of multiple family residences.

Pursuant to the applicable provisions of the city charter, referendary petitions were filed seeking to suspend the amending of the ordinance pending repeal by the city council or final determination by

the electors. Before the council acted on the petitions, however, a preliminary injunction was issued by the Oakland county circuit court restraining any further action by the city. Upon the city's failure to contest the restraining order, defendant citizens were permitted to intervene. The sole issue presented is whether the general initiative and referendum provisions in the charter of a home rule city give rise to a right to repeal an amendatory zoning ordinance by referendum.

There is no provision in the Constitution of 1963 reserving to the people the power of initiative and referendum with respect to local ordinances. Such power exists only by virtue of section 4-i of the home-rule act,[1] which provides:

"Each city may in its charter provide:

*        *        *

"(6) For the initiative and referendum on all matters within the scope of its powers *  *  * ."

Similarly, the zoning power of a city is derived from Act No 207 of the Public Acts of 1921, as amended, known as the city or village zoning enabling act.[2] This act was passed in response to the holding in *Clements* v. *McCabe* (1920), 210 Mich 207, that the power derived by a municipality by virtue of the home-rule act does not include the "evolutionary and comprehensive police power of zoning."

Section 16.07 of the charter of the city of Clawson provides:

"An ordinance may be initiated by petition, or a referendum on an ordinance enacted by the council may be had by a petition, as hereinafter provided."

---

[1] MCLA § 117.4i (Stat Ann 1969 Cum Supp § 5.2082).
[2] MCLA § 125.581 *et seq.* (Stat Ann 1960 Rev § 5.2931 *et seq.*).

Defendants contend that the charter provision in no way restricts the broad statutory grant of the power of initiative and referendum contained in the home rule act. They conclude that, since no type of ordinance is excluded, *all* matters within the scope of the city's powers plainly includes zoning ordinances and that such right can only be limited by constitutional or other statutory provision.

Even in jurisdictions in which the power of initiative and referendum on local legislation has been constitutionally reserved, defendants' seemingly logical argument has clearly been rejected with respect to the power of initiative.

" 'It is the established law of this state that an ordinance proposed by the electors of a county or of a city in this state under the initiative law must constitute such legislation as the legislative body of such county or city has the power to enact under the law granting, defining and limiting the powers of such body. \* \* \* The zoning law vests in the legislative body of the city broad discretionary power, but when the method for the exercise of the power is prescribed by the statute such method is the measure of the power to act. \* \* \* The legislature may have considered, and very properly so, that in the enactment of a zoning ordinance property rights might be seriously affected. \* \* \* the requirement, of notice and hearing provided by the statute may not be treated lightly or at all disregarded. When the statute requires notice and hearing as to the possible effect of a zoning law upon property rights the action of the legislative body becomes quasi-judicial in character, and the statutory notice and hearing then becomes necessary in order to satisfy the requirements of due process and may not be dispensed with.

" 'Whether the requirements of the zoning act as to notice and hearing could be complied with in the enactment of an ordinance by the board of trustees

pursuant to the demand of the initiative petition that the proposed ordinance be passed without alteration or amendment need not be passed upon. It would seem to be an idle proceeding for the board of trustees, after an initiative petition is presented to it, to enter upon an investigation as to a proper zoning plan, give notice and conduct hearings for the benefit of interested property owners and the public in general and at the conclusion of its deliberations have no power to change the terms of the proposed ordinance. The initiative law and the zoning law are hopelessly inconsistent and in conflict as to the manner of the preparation and adoption of a zoning ordinance. The zoning act is a special statute dealing with a particular subject and must be deemed to be controlling over the initiative, which is general in its scope.' " *Dewey* v. *Doxey-Layton Realty Co.* (1954), 3 Utah 2d 1 (277 P2d 805), citing *Hurst* v. *City of Burlingame* (1929), 207 Cal 134 (277 P 308).

See, also, *State ex rel. Hunzicker* v. *Pulliam* (1934), 168 Okla 632 (37 P2d 417, 96 ALR 1294); *Kelley* v. *John* (1956), 162 Neb 319 (75 NW2d 713); *Laguna Beach Taxpayers' Association* v. *City Council of the City of Laguna Beach* (1960), 187 Cal App 2d 412 (9 Cal Rptr 775); *State* v. *Donohue* (Mo, 1963), 368 SW2d 432; *City of Scottsdale* v. *Superior Court of the State of Arizona* (1968), 103 Ariz 204 (439 P2d 290).

Courts have recognized other limitations as well on the applicability of direct legislation to local ordinances in general and zoning ordinances in particular. See *Kelley* v. *John, supra;* 5 Utah L Rev 413 (1957); *Dewey* v. *Doxey-Layton Realty Co., supra;* 5 McQuillin Municipal Corporations (3d ed), § 16.43 *et seq.,* p 199; *McKinley* v. *City of Frazer* (1962), 366 Mich 104.

However, the rationale for withdrawing the power of initiative from zoning legislation has not been applied to the power of referendum. A local legislative body, in enacting a zoning ordinance upon which a referendum is sought, may very well have complied with the procedural due process requirements of the zoning statute. Therefore, if the power of referendum with respect to local legislation has been constitutionally reserved to the people, its exercise on zoning ordinances has been upheld.

"[I]t would undoubtedly be conceded that, had the board of trustees of the city of Burlingame adopted a zoning ordinance, as provided by the statute, its final action would be subject to the referendum provisions of the constitution and laws of the state, for the obvious reason that there is embodied in the enactment of a zoning ordinance such elements of legislative action as to subject the ordinance when adopted to the reserved legislative power of the electors of the city, when properly invoked, to approve or reject it. * * *" *Hurst v. City of Burlingame, supra,* 207 Cal at p 142 (277 P 312).

"Whenever the council acts in its legislative capacity, the action it takes is subject to the constitutional right of referendum unless such action falls into one of the exceptions provided for in the constitution.

"The right of referendum with respect to zoning ordinances is essential for the protection of the rights of the electors of each city. A zoning ordinance can and does have a more direct and lasting effect upon property values and property owners within a city than almost any other type of ordinance. What is done with respect to one piece of property of necessity has an effect, good or bad, upon adjacent or nearby property." *Johnston v. City of Claremont* (1958), 49 Cal 2d 826 (323 P2d 71), following *Hurst v. Burlingame, supra.* Accord:

*Hilltop Realty, Inc.* v. *City of South Euclid* (1960), 110 Ohio App 535 (164 NE2d 180).

In jurisdictions like Michigan in which the power of initiative and referendum on local legislation is not constitutionally reserved but is delegated by statute as a permissible charter provision, the judicial construction of applicable laws has led to diverse conclusions as to whether and to what extent zoning ordinances are subject to the power of referendum. 5 McQuillin Municipal Corporations (3d ed), § 16.57, p 221.

If the referendum provision in question is contained within the applicable zoning enabling act itself, it has been given full force and effect. *Stadle* v. *Township of Battle Creek* (1956), 346 Mich 64. *Cf. Minneapolis-Honeywell Regulator Company* v. *Nadasdy* (1956), 247 Minn 159 (76 NW2d 670).

More closely approximating the present case, however, are those instances in which the referendum sought is not pursuant to a provision in the zoning enabling act, but to a section in the city charter providing for a referendum generally on local ordinances.

In *Elkind* v. *City of New Rochelle* (1957), 5 Misc 2d 296 (163 NYS2d 870), aff'd (1958), 5 NY2d 836 (181 NYS2d 509), the court held that such a general referendary provision did not authorize a referendum on a zoning ordinance or an amendment thereto.

"In the first place, the charter was adopted as a local law pursuant to the city home rule law. Section 15 of this latter law expressly states the instances where it is mandatory to hold a referendum. Section 17 sets forth the instances in which a referendum may be secured by petition. In neither of these sections does the city home rule law grant any authority to a city to provide for a referendum on a zoning ordinance, or an amendment thereto.

"The Court of Appeals has passed on this question in *McCabe* v. *Voorhis,* 243 NY 401, at p 413 (153 NE 849, at p 851), where Judge Pound, writing for a unanimous court, said:

" 'The power to provide for a referendum must be found in the city home rule act. * * * Otherwise it is unauthorized. Direct legislation in cities must always rest on some constitutional or statutory grant of power. Government by representation is still the rule. Direct action by the people is the exception. The test of validity, therefore, is whether local law no. 16 has been adopted as a local law coming within the powers delegated to the city by such law. The power asserted by the city must fail unless the local law squares itself with the restrictions therein contained.' "

The *Elkind* case is distinguishable in that the New York home rule act does not contain a provision comparable to the general referendum provision of our own statute. However, the provision of the zoning enabling act considered therein closely resembles MCLA § 125.584 (Stat Ann 1969 Rev § 5.2934) from which the power of the city of Clawson to adopt and amend a zoning ordinance is derived:

"The legislative body of any city or village may provide by ordinance for the manner in which such regulations and boundaries of districts or zones shall be determined and enforced, or from time to time amended, supplemented or changed: Provided, however, That a public hearing shall be held before any such regulations shall become effective: And provided further, That not less than 15 days' notice of the time and place of such public hearing shall first be published in an official paper or a paper of general circulation in such city or village, and that not less than 15 days' notice of the time and place of such public hearing shall first be given by registered United States mail to each public utility company and to each railroad company owning or oper- .

ating any public utility or railroad within the districts or zones affected, and a hearing be granted any person interested at the time and place specified. In cities having a population of 25,000 or more according to the last federal or state census, the legislative body may appoint a commission to recommend in the first instance the boundaries of districts and appropriate regulations to be enforced therein. Such commission shall thereupon make a tentative report and hold public hearings thereon at such times and places as the legislative body shall require before submitting its final report. In cities having a population of 25,000 or more according to the last federal or state census, said legislative body shall not in the first instance determine the boundaries of districts nor impose regulations until after the final report of a commission so appointed. In cities having a population of 25,000 or more according to the last federal or state census, the hearing as above provided before the legislative body shall not take place until such final report of such commission has been received, *nor shall the ordinance or maps be amended after they are adopted in the first instance until the proposed amendment has been submitted to such commission and it has made report thereon.* In either case the legislative body may adopt such ordinance and maps with or without amendments, or refer same again to the commission for a further report. Where a city has a city plan commission or corresponding commission the legislative body may appoint such commission to perform the duties above specified. *After the ordinance and maps have in the first instance been approved by the legislative body of a city or village, amendments or supplements thereto may be made from time to time as above provided, but in case a protest against a proposed amendment, supplement or change be presented, duly signed by the owners of 20 per centum or more of the frontage proposed to be altered, or by the owners of 20 per centum or more of the frontage immedi-*

*ately in the rear thereof, or by the owners of 20 per centum of the frontage directly opposite the frontage proposed to be altered, such amendment shall not be passed except by the 3/4 vote of such legislative body."* (Emphasis supplied.)

In considering the New York counterpart of the above statute, the court in *Elkind* stated:

"This method and procedure established by the legislature for all cities would be completely nullified if a referendum were to be substituted for the safeguards provided by this section.

\*        \*        \*

"These statutes require that any zoning law shall be based on a well-considered and comprehensive plan by means of which the land in the municipality may be used for purposes for which it is best suited and all reasonably necessary uses may be provided for. If, after the adoption of a zoning ordinance, meeting these requirements, some of its provisions may be deleted by a referendum of the electors, the comprehensiveness mandated by the legislature could well be destroyed. Essential uses, such as for churches and schools, could be barred from the municipalities.

"In the instant case, while the common council may comply with section 83 of the general city law in amending the New Rochelle zoning ordinance, as it here did, its legislation and the city's compliance with the said section could be completely nullified if such acts were subject to a referendum of the electors of the city. This would create, as it has here, a situation where there has been formal but ineffective compliance. This would exalt form above substance." (pp 301, 302)

The same result was reached in the recent case of *Hancock v. Rouse* (Tex Civ App, 1969), 437 SW2d 1. As in *Elkind,* a referendum on an amendatory zoning ordinance was sought pursuant to the gen-

eral referendary provision of the city charter. Prefatorily, the court stated at p 3:

"The charter of the city of Bellaire provides that all of the powers granted to cities by Arts. 1011a to 1011j, inclusive, Texas Rev Civ Statutes, 1925, are adopted and 'made a part of' the charter. *Necessarily the charter also includes the restrictions of the legislative power of the city found in those articles.*" (Emphasis supplied.)

After setting forth the relevant provisions of the applicable zoning enabling act, again similar to our own, the court concluded:

"These general laws, which have been incorporated by reference into the charter of the city of Bellaire, contemplate that comprehensive zoning ordinances, and ordinances having the purpose of changing, amending, or repealing such ordinances, will be enacted by the local legislative body, *i.e.*, the city council. This is clear from the requirement that this action must be preceded by a study made by the zoning commission after public hearings resulting in recommendations to the council by the commission, and by a public hearing before the city council. While the city council may authorize a joint public hearing, both the zoning commission and the city council must give those interested the opportunity to attend a hearing. While the report of the zoning commission is advisory, the council must await that report before taking final action. The preparation of a comprehensive zoning ordinance, which would meet the objectives set out in the statute, requires careful study, the accumulation of masses of detailed information concerning land use within the city, and is a matter concerning which the professional advice of one experienced in city planning would be most helpful. It would be very difficult to present the information necessary to evaluate a proposed zoning

ordinance to the voters in an intelligible manner. (Citations omitted.)

"Notice and hearing, as well as reference to the zoning commission, are also required before an ordinance adding to, changing or repealing the comprehensive zoning ordinance can be enacted. In addition, in event of a proper protest, Art 1011e requires passage by a three-fourths' majority of *all the members of the legislative body.* While the citizens of a city are acting in a legislative capacity when voting pursuant to the initiatory process, the qualified voters of such a city would not constitute a 'legislative body'. The words 'legislative body' in Art 1011e clearly refer to the city council, and these words, when used in other sections of the same act, and in amendments thereto, will be presumed to have the same meaning.

"These provisions of the general law, adopted into the charter of the city of Bellaire, by implication, have withdrawn the subject of zoning from the field in which the initiatory process is operative and have reserved this subject from referendum." (Citations omitted.) (pp 3, 4) (Emphasis in original.)

It is urged that *Stadle* v. *Township of Battle Creek, supra,* reflects judicial recognition of a legislative policy favoring an optional referendum with respect to amendatory zoning ordinances. *Cf. Hilltop Realty, Inc.* v. *City of South Euclid* (1960), 110 Ohio App 535 (164 NE2d 180). To the contrary, the holding in *Stadle* was simply one of statutory construction. As noted above, the statute there in question, the township zoning enabling act, specifically provided for a referendum:

"Within 30 days following the passage of such zoning ordinance, a petition signed by a number of qualified and registered voters residing in the township equal to not less than 8 per cent of the total vote cast for all candidates for governor, at the last preceding general election at which a governor was

elected, in the township may be filed with the township clerk praying therein for the submission of such ordinance to the electors residing in the township for their approval or rejection. Upon the filing of such petition, such ordinance shall not take effect until the same shall have been approved by a majority of the electors residing in the township voting thereon at the next regular election which supplies reasonable time for proper notices and printing of ballots, or at any special election called for that purpose. The township board shall provide the manner of submitting such ordinance to the electors for their approval, and determining the result thereof." CL 1948, § 125.282 (Stat Ann 1949 Rev § 5.2963 [12]).

The Court rejected the argument that the referendum be confined solely to the initial question of whether the township should be governed at all by a comprehensive zoning ordinance. In holding that the right of referendum applied as well to the type and kind of zoning ordinance proposed, including amendatory zoning ordinances, the Court expressed the following concern:

"This act as construed by the trial court would give to the township board an opportunity to pass a zoning ordinance acceptable to the residents of a township and then after 30 days had expired, without protest by referendum, to amend the ordinance in such a way as to be unacceptable to a majority of the residents. We cannot so construe this statute." (p 69)

The referendary provision upheld in *Stadle* is conspicuously absent from the city zoning enabling act. Defendants contend that there was no need for such provision inasmuch as the same right was conferred by the general referendary provision of the home-rule act. We cannot agree.

Initiative and referendum provide an effective means of protecting the rights of citizens with respect to the enactment of general legislation. Zoning legislation, however, poses special problems. The protection of private property rights must be balanced with the community's need for a comprehensive and flexible zoning plan. The general referendary provision of the Clawson city charter imposes no time limit in which a referendum on a proposed ordinance must be brought. Such an initiative and referendary plan without time limitation tends to destroy the comprehensiveness and coordination of zoning legislation. If zoning ordinances were subject to such provision, what reliance could be placed upon such ordinances by owners or prospective purchasers of property?

To this extent,

"[T]he legislature has delegated the power to zone to the legislative bodies of cities and towns, so that the need for a comprehensive plan might be met, and provided means for the protection of private property through notice and public hearings.

"The state legislature has here acted within its powers and unless that general law is affected by repeal or amendment by the legislature, or by referendum or initiative by the people of the state, the statute guides the zoning process of the cities and directs the means by which it is to be accomplished." *Dewey* v. *Doxey-Layton Realty Co.* 3 Utah 2d 1, 7 (277 P2d 805, 809).

For the reasons expressed in *Elkind* and *Hancock*, *supra,* we affirm the judgment of the trial court. The statutory scheme specifically designed for amending city zoning ordinances properly emphasizes the high level of expertise required for the efficient administration of such complex legislation. In addition, it wisely limits the availability of pro-

test to those property owners most likely to be directly affected by a change in the zoning law. The protection of private property rights which concerned the Supreme Court in *Stadle, supra,* has been provided for in a manner appropriately suited to the circumstances.

Affirmed.

All concurred.