[Civ. No. 37487. First Dist., Div. Three. Apr. 19, 1976.]

EARL T. MELDRIM et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY et al.,
Defendants and Respondents.

## COUNSEL

Earl T. Meldrim and Geno F. Banducci, in pro. per., for Plaintiffs and Appellants.

John B. Clausen, County Counsel, and Arthur W. Walenta, Jr., Assistant County Counsel, for Defendants and Respondents.

## OPINION

**DEVINE, J.**\*—In this taxpayers' suit, judgment was given in favor of defendants, supervisors and other officers of Contra Costa County. The taxpayers sought to invalidate an ordinance passed by the supervisors in 1974 which set the salaries of members of the board of supervisors at $14,282.80 per year, because a 1972 ordinance, passed by initiative in 1972 had fixed the salaries at $13,200 per year, and county initiative measures may not be amended or repealed (unless so provided in a measure), without approval of the voters. (Elec. Code, § 3720.) The initiative measure in turn had followed a 1970 ordinance in which the salaries had been set by the supervisors at $14,500. A referendum proceeding had been commenced against the 1970 ordinance but had failed to collect the necessary number of signatures. ██ The trial judge decided that the 1972 initiative measure itself was unconstitutional and that therefore the 1974 ordinance was valid.

We sustain the judgment. Prior to 1970, the Legislature set the salaries of supervisors in general law counties, of which Contra Costa is one. In 1970, California Constitution, article XI, section 1, subdivision (b) was amended by the voters to read as follows: "The Legislature shall provide for county powers and an elected governing body in each county. Except as provided in subdivision (b) of Section 4 of this article, each governing body shall prescribe by ordinance the compensation of its members, but the ordinance prescribing such compensation shall be subject to referendum." The language of the amendment is clear: the *governing body* (and not the "county" or the "voters") shall prescribe the compensation. In contrast, the state Constitution gives *counties* the right to make and enforce ordinances not in conflict with general laws (Cal. Const., art. XI, § 7) and gives charter counties the right to set the salaries of their

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

supervisors. (Cal. Const., art. XI, § 4, subd. (b).) The constitutional amendment adopted by the voters could have added the authority to set the salary of the supervisors of noncharter counties to the general powers of such counties (Cal. Const., art. XI, § 7), but, instead, it specifically gave that power to the governing bodies themselves, subject to referendum. If the initiative were held to be applicable, the *voters* could *prescribe* the compensation, in contradiction to the provision that the *governing body* shall do so.

Although the clarity of the constitutional provision makes unnecessary a declaration of the reasons which might be marshalled to sustain the judgment, it is not amiss to state some likely rationale for the procedure ordained by the constitutional amendment particularly because of appellants' assertion, as discussed below, that initiative and referendum are virtually interchangeable.

(1) Before the 1970 amendment, the setting of supervisors' salaries was done by a legislative body and not by the voters. The removal of the function from the State Legislature to the governing body of the county, as stated by one of its authors, was that it would "give citizens a voice at public meetings when supervisors' pay increases are proposed" and would give "local citizens the opportunity to vote against unnecessary salary increases." There is no mention of giving the local citizens the right to set the supervisors' salaries by an initiative. (Ballot Pamp., Proposed Amends. to Cal. Const. Gen. Election (Nov. 3, 1970) art. I, p. 21.)

(2) The members of the governing body can inform themselves of comparable salaries in other counties or governmental units and also will be knowledgeable in the matter of the hours required for the work and so forth. Presumably they will act with appreciation that the voters may by referendum reject their decision. (Eléc. Code, §§ 3752, 3753.) It is to be observed that in 1971 the Legislature enlarged the time for referendum in respect of salaries of the governing body from the 30 days which applies generally, to 60 days. (Elec. Code, § 3751.5.)

(3) Once passed, an initiative measure (unless it made allowance of amendment or repeal) would freeze salaries until a petition to raise them were drafted, signed by the requisite percentage of voters and adopted at an election. The Legislature, in proposing the constitutional amendment, may have regarded such inflexibility to be contrary to the public welfare.

But our holding rests principally on the words of the amendment. It is not our function to alter them.

Appellants say that the processes of initiative and referendum are essentially the same, wherefore if one is provided, impliedly so is the other. There is cited in *Duran* v. *Cassidy*, 28 Cal.App.3d 574 [104 Cal.Rptr. 793], in which it was held (at p. 582) that failure to assert a referendum petition within the statutory time does not foreclose the power to seek a change in the legislative policy by the initiative process. But the case had to do with the provisions of a city charter, which by and large, is the supreme law as to municipal affairs. (*Duran* v. *Cassidy*, *supra*, at p. 583.) The charter in unequivocal terms provided that the legislative power should be vested not only in the council but in the people through initiative and referendum. *Ibid.*, at page 583. In the present case, we are not dealing with a county governed by charter. Also cited is *Dwyer* v. *City Council*, 200 Cal. 505 [253 P. 932], in which there is reference to the initiative as a "corollary" to the right of referendum; but as was pointed out in *Hurst* v. *City of Burlingame*, 207 Cal. 134, 142 [277 P. 308], there was no need to discuss any distinction between the effectiveness of initiative and referendum in *Dwyer* because referendum clearly applied. But in the present case, a clearly worded specific constitutional amendment describes the precise procedure for a single function, the setting of salaries.

It is argued that the initiative is a favored process, as an exercise of sovereignty by the people themselves, and that in cases of doubt, the right to initiative should be upheld. (See *Martin* v. *Smith*, 176 Cal.App.2d 115 [1 Cal.Rptr. 307]; *Knowlton* v. *Hezmalhalch*, 32 Cal.App.2d 419, 434 [89 P.2d 1109].) This proposition we accept readily. But the constitutional amendment itself was enacted by the people of the whole state. In *Hurst* v. *City of Burlingame*, *supra*, at pages 141, 142, a zoning ordinance of a general law city, although it was passed by initiative, was held invalid because of its conflict with a state zoning act; a fortiori, an initiative measure which conflicts with the state Constitution is void.

Finally, appellants contend that the subject of this lawsuit is res judicata. Following the passage by the supervisors of an ordinance in 1970 raising the supervisors' salaries to $14,500 and the failure to attract enough signatures for referendum within the time limit, the proposed initiative ordinance setting the salaries at $13,200 was adopted. Thereupon, a petition for writ of mandate to invalidate the initiative measure

was filed by James P. Kenny, who was a supervisor but who brought the proceeding in his individual capacity, against the county and the county auditor. A distinguished judge, with whose opinion in this case we disagree, decided that the provision for the $13,200 salary was valid. Mr. Kenny did not appeal. Thereafter, the supervisors enacted the 1974 ordinance setting salaries at $14,240, an act which could not be sustained if the initiative ordinance were valid. (Elec. Code, § 3720.)

It is our conclusion, as it was of the trial judge in the present proceeding, that the earlier judgment does not make the matter res judicata. The parties to the lawsuits are not the same. The identity of parties necessary to establish the defense of res judicata must be identity of parties in the same capacity. (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 224, p. 3358.) The supervisors in their capacity as public officers are distinct from the county which was a party defendant in the former case. Under the provisions of article XI, section 1, subdivision (b) of the California Constitution, the members of the governing body of the county have the right and the duty to prescribe the compensation of the members. The right of the supervisors, as such, has not been adjudicated. The right may be of value to the incumbent supervisors personally but their duty as public officers is to provide a fair compensation, one which will attract persons of integrity and competence. The former case is not res judicata against the supervisors sued in their capacities as such officers as defendants in the present case.

Besides the earlier judgment upholding the initiative cannot be held res judicata and effective to annul the 1974 ordinance which, as we decide, was passed in conformity with the constitutional directive.

The judgment declaring ordinance 74-49 of the Contra Costa County Board of Supervisors to be valid and effective is affirmed.

Brown (H. C.), Acting P. J., and Good, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.