[No. C028749. Third Dist. Feb. 25, 1999.]

KAREN KEATING JAHR, as County Counsel, etc., Plaintiff and Respondent, v.
GEORGE CASEBEER et al., Defendants and Appellants.

COUNSEL

Olson, Hagel, Leidigh, Waters & Fishburn, George Waters, N. Eugene Hill and Abhas Hajela for Defendants and Appellants.

Karen Keating Jahr, County Counsel; McDonough, Holland & Allen, Mark A. Wasser, Steven Woodside and Eric N. Robinson for Plaintiff and Respondent.

Ruth Sorensen for California State Association of Counties as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION

CALLAHAN, J.—The sole issue in this appeal is whether article XI, section 1, subdivision (b) of the California Constitution (article XI, section 1(b)) permits local voters to set county supervisor salaries by initiative.[1] Citing *Meldrim* v. *Board of Supervisors* (1976) 57 Cal.App.3d 341 [127 Cal.Rptr. 52] (hereafter *Meldrim*), the trial court ruled it does not. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Karen Keating Jahr is County Counsel of Shasta County (County Counsel). By virtue of this position, she is responsible for providing the ballot title and summary for proposed countywide measures. (Elec. Code, § 9105, subd. (a).) Defendants George Casebeer and Aaron Sockwell are Shasta County voters, and members of the Deputy Sheriff's Association of Shasta County (Deputies).

---

[1]Article XI, section 1(b) reads: "The Legislature shall provide for county powers, an elected county sheriff, an elected district attorney, an elected assessor, and an elected governing body in each county. Except as provided in subdivision (b) of Section 4 of this article, each governing body shall prescribe by ordinance the compensation of its members, but the ordinance prescribing such compensation shall be subject to referendum. The Legislature or the governing body may provide for other officers whose compensation shall be prescribed by the governing body. The governing body shall provide for the number, compensation, tenure, and appointment of employees."

On January 9, 1996, the Shasta County Board of Supervisors (Board) enacted Shasta County Ordinance No. 495-14, "An Ordinance . . . Establishing Compensation for Members of the Board of Supervisors."[2] By its terms, the ordinance took effect 60 days later, in accordance with Government Code section 25123.5 and Elections Code section 9143. No one, including the Deputies, challenged Ordinance No. 495-14 by referendum within the 60-day period.

On October 8, 1997, the Deputies submitted a proposed initiative to the county clerk/recorder which, if approved, would amend Ordinance No. 495-14. They also requested that County Counsel prepare the ballot title and summary. The stated purpose of the proposed initiative "is to revise the salaries of the members of the [Board] so the salaries more appropriately reflect the duties and responsibilities of the members and are also aligned with the salaries of elected officials in comparable jurisdictions." Specifically, the proposed initiative provides that "[w]ithin 20 days of the effective date of this amended ordinance, the [Board] shall hold a public hearing and shall set the salary for the members of the [Board]. The new salary shall take effect upon adoption by the [Board]. The salary for each member of the [Board] shall not exceed the base pay of a member of the Redding City Council. Thereafter, the [Board] may hold a public hearing no more than once a year to consider whether to adjust the salary of the members of the [Board]. In any event, the salary shall not exceed the base pay of the members of the Redding City Council . . . ."

The county clerk/recorder forwarded a copy of the proposed initiative to County Counsel for preparation of the title and summary. County Counsel immediately filed an action in the superior court seeking a declaration that the proposed initiative was unconstitutional. She also sought relief from the duty to prepare a title and summary. The court granted County Counsel's request for a stay pending hearing on the merits. We denied the Deputies' petition for writ of mandate to set aside the trial court's stay.

Following a hearing on the merits, the court granted the relief requested by County Counsel. The court found that "the clear language of Article XI, § 1(b) and the decision in *Meldrim*[, *supra*, 57 Cal.App.3d 341] compel the Court to agree with plaintiff that the proposed initiative is unconstitutional." This appeal ensued.

---

[2]We take *judicial notice of documents comprising the legislative history* of Proposition 12 and Senate Bill No. 512 (1971 Reg. Sess.). (Evid. Code, § 452, subd. (c).) We also grant the request for judicial notice submitted by amicus curiae California State Association of Counties. (Evid. Code, § 452, subd. (h).)

## DISCUSSION

■ The Deputies concede *Meldrim* is on point, but contend "it is dead wrong." We reject that contention.

*Meldrim* was a taxpayers' suit in which plaintiffs tried to invalidate a 1974 ordinance passed by the Contra Costa County Board of Supervisors which set the supervisors' salaries at $14,282.80 per year. Plaintiffs argued the ordinance violated a 1972 initiative which fixed the salaries at $13,200 per year. The trial court decided the 1972 initiative was unconstitutional, and the appellate court affirmed that judgment. (57 Cal.App.3d at p. 343.)

The decision in *Meldrim* rests primarily on the appellate court's conclusion the language of article XI, section 1(b) is clear. (57 Cal.App.3d at pp. 343-344, 345.) The Deputies challenge that conclusion, specifically arguing that: (1) there is no clear statement in article XI, section 1(b) exempting the supervisors' salaries from the initiative power; (2) the term "governing body" can be read to include the voters as well as the Board; and (3) given the doubt as to the meaning of the constitutional provision, this court should uphold the right to engage in the favored initiative process. Well-established principles of construction support *Meldrim's* reading of article XI, section 1(b), and the trial court's ruling in this case.

■ Constitutional provisions are construed with reference to their underlying purpose. (*Franchise Tax Bd.* v. *Superior Court* (1989) 212 Cal.App.3d 1343, 1347 [261 Cal.Rptr. 236].) Thus, "our primary task is to determine the lawmakers' intent. . . . In the case of a constitutional provision adopted by the voters, their intent governs. . . . To determine intent, ' "The court turns first to the words themselves for the answer." ' . . ." (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934], citations omitted.) Moreover, the provision should be construed in accordance with the " 'natural and ordinary meaning of its words.' . . ." (*ITT World Communications, Inc.* v. *City and County of San Francisco* (1985) 37 Cal.3d 859, 865 [210 Cal.Rptr. 226, 693 P.2d 811], citations omitted.) " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent . . . of the voters . . . .' . . ." (*Delaney* v. *Superior Court, supra,* 50 Cal.3d at p. 798, citation omitted.)

■ Here, the language could not be clearer that article XI, section 1(b) authorizes voters to challenge county supervisors' salaries by *referendum.* There is nothing in the wording of article XI, section 1(b) to suggest the electorate of California intended to grant local voters *initiative power* for this purpose when they approved the constitutional amendment in 1970.

Nor does it make sense to read the term "governing body" to include "voters," as suggested by the Deputies. The language at issue states that "each *governing body* shall prescribe by ordinance the compensation *of its members*, but the ordinance prescribing such compensation shall be subject to referendum." (Italics added.) In the context of article XI, section 1(b), "governing body" can only refer to a local legislative body such as the Board.

Moreover, we are reluctant to imply the right of initiative in the face of this plain language where article XI, section 1(b) adequately protects citizens' interests from abuses of the salary-setting power. As noted by amicus curiae California State Association of Counties (CSAC), "The referendum is a powerful check on the power of the board of supervisors to set salaries; . . ." CSAC cites successful efforts by voters in San Mateo and Glenn Counties to challenge salary ordinances by referendum. We also note that voters are free to express their displeasure with individual supervisors at the ballot box.

The Deputies complain the right of initiative should not be extinguished by negative inference. They invoke legislative history to bolster their argument in favor of implying initiative power where it is not expressly granted.

"Article XI, section 1(b) was originally enacted in June of 1970, as part of a comprehensive revision of article XI, governing the constitutional prerogatives of and limitations on California cities and counties. The predecessor to article XI, section 1(b) was former article XI, section 5, . . . amended in 1933, and subsequently, to give greater local autonomy to the setting of salaries for county officers and employees, removing that function from the centralized control of the Legislature. Nonetheless, the June 1970 enactment still mandated the Legislature to set the salary of the boards of supervisors, which were in turn to set the salaries of all other officers and employees. In November of 1970, in an action of the Legislature, the amendment to article XI, section 1(b) was placed on the ballot to provide that the supervisors should set their own salaries, subject to referendum, and it was approved." (*Voters for Responsible Retirement* v. *Board of Supervisors* (1994) 8 Cal.4th 765, 772 [35 Cal.Rptr.2d 814, 884 P.2d 645].)

The Deputies cite the argument in favor of Proposition 12, the amendment to article XI, section 1(b) approved by voters in November 1970, which reads in part: "This proposition will restore home rule, and place the responsibility for setting local salaries where it belongs. It will stop a useless waste of the State Legislature's time, which occurs when they 'rubber stamp' grand jury requests for supervisors' pay increases." (Ballot Pamp.,

Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 3, 1970) argument in favor of Prop. 12, p. 21, underscoring in original.) They argue that "[i]t is difficult to reconcile the phrase 'will restore home rule' with the conclusion that Proposition 12 would, by implication, prohibit all initiatives concerning supervisors' compensation." They also suggest "the most likely reason that Proposition 12 contained an explicit reference to the referendum power is that that was the clearest way to illustrate the full extent of the return to home rule."

Even if we were to conclude the language of article XI, section 1(b) is ambiguous, which we do not, legislative history supports the conclusion reached by the trial court that the Deputies' proposed initiative is unconstitutional. The argument in favor of Proposition 12 emphasized the constitutional amendment gave voters the opportunity to vote against unnecessary salary increases, and noted the current system included "[n]o right of referendum if pay [was] too high." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec., *supra*, argument in favor of Prop. 12, pp. 20-21.) The analysis and arguments use the term "referendum" five times, but do not mention the term "initiative." (*Ibid.*) There is nothing in the ballot materials to suggest Proposition 12 would allow voters to set supervisor salaries directly.

Subsequent legislative action also supports our reading of article XI, section 1(b). According to a May 1971 article in the San Francisco Examiner, "[a] wholesale rush by California county supervisors to raise their own salaries . . . prompted legislative action to give the public more time to mount referendum campaigns to block the increases." (Welter, *County Board Salary Hurdle OKd in Senate*, S.F. Examiner (May 5, 1971) p. 9, col. 1.) Thus, the Legislature followed the voters' adoption of Proposition 12 with the enactment of Senate Bill No. 512 as an urgency measure. (Stats. 1971, ch. 556, §§ 1-3, pp. 1069-1070.) The bill added Government Code section 25123.5 and Elections Code former section 3751.5 (now renumbered section 9143; see Stats. 1976, ch. 248, § 2, p. 488) which extended the effective date of any ordinance changing supervisors' salaries from 30 to 60 days.

In an August 9, 1971, letter urging the Governor's signature, bill author Senator Milton Marks summarized the history of Proposition 12, stating: "Under existing law, if the voters sign a petition during this 30 day period protesting the adoption of an ordinance increasing supervisorial salaries, the Board of Supervisors must either repeal the ordinance or submit it to the voters. [¶] My SB 512 will extend the referendum period for ordinances changing a supervisor's salary from 30 days to 60 days. Much concern has

been expressed since boards began passing ordinances under the provisions of Proposition 12. This bill will balance the power between the Board of Supervisors and the voters['] ability to respond, if they deem it necessary." (Sen. Marks, letter to Gov. Reagan regarding Sen. Bill No. 512 (Aug. 9, 1971) p. 1.) Senator Marks's characterization of his legislation is consistent with the understanding article XI, section 1(b) involves referendum not initiative power.

An issue remains which the Deputies say was resolved contrary to *Meldrim* in more recent California decisions—whether the court must imply the right to initiative where the right to referendum is expressly stated. (See *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 595 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038], quoting *Dwyer* v. *City Council* (1927) 200 Cal. 505, 511 [253 P. 932] (hereafter *Dwyer*).) This question was peripheral to *Meldrim*'s statutory analysis. (57 Cal.App.3d at p. 345.) Having carefully reviewed the authority cited by the Deputies, we conclude there is no merit to their assertion.

At oral argument, the Deputies argued *Voters for Responsible Retirement* v. *Board of Supervisors, supra,* 8 Cal.4th 765 supports their argument referendum and initiative powers are congruent. That case addressed an ambiguity in the *last* sentence of article XI, section 1(b)—which contains *no mention* of referendum or initiative powers—and the question whether Trinity County could be forced to submit an ordinance implementing memoranda of understanding between the board of supervisors and county employee associations to voter referendum. (*Voters for Responsible Retirement, supra,* at pp. 769, 772.) In this context, the Deputies quote language that the Supreme Court would presume, "absent a clear showing of the Legislature's intent to the contrary, that legislative decisions of a city council or board of supervisors—including local employee compensation decisions [citation]—are subject to initiative *and* referendum." (*Id.* at p. 777, italics added.) The portion of article XI, section 1(b) at issue here expressly refers to the referendum power, and therefore escapes the claim of ambiguity raised in *Voters for Responsible Retirement* v. *Board of Supervisors.*

The Deputies contend the *Meldrim* court was wrong in rejecting the taxpayers' reliance on *Dwyer,* the source of the language linking referendum and initiative as corollary rights, on grounds the quote was dicta. (*Meldrim, supra,* 57 Cal.App.3d at p. 345.)

The dicta in *Dwyer* was drawn from two early appellate court decisions which addressed the question whether local voters could exercise the

*referendum* to overturn road improvement decisions made by a municipality under authority of state law: *Starbuck* v. *City of Fullerton* (1917) 34 Cal.App. 683, 684-685 [168 P. 583]; and *Chase* v. *Kalber* (1915) 28 Cal.App. 561, 563 [153 P. 397]. (*Dwyer, supra,* 200 Cal. at p. 511.) The courts in both cases reasoned without detailed analysis that if the referendum were available, the correlative right of initiative would also be available. (*Starbuck* v. *City of Fullerton, supra,* 34 Cal.App. at p. 685; and *Chase* v. *Kalber, supra,* 28 Cal.App. 561, 563.) It appears these courts linked the referendum and the initiative so they could highlight the problems that precluded use of the initiative to challenge local road improvement efforts. They then ruled that the California electorate could not have intended the referendum and initiative to apply to local action on street improvement because use of such powers would: (1) delay construction and inconvenience to the public; and (2) vest in voters whose property was not directly affected with the right to initiate or disapprove proposed roadwork. (*Starbuck* v. *City of Fullerton, supra,* 34 Cal.App. at p. 685; and *Chase* v. *Kalber, supra,* 28 Cal.App. at pp. 573-575.)

The *Meldrim* court cited *Hurst* v. *City of Burlingame* (1929) 207 Cal. 134 [277 P. 308] (hereafter *Hurst*) in support of its point the *Dwyer* language was dicta, and as an example of a local zoning initiative invalidated by the Supreme Court because it conflicted with a state zoning act. (207 Cal. at pp. 141-142.) The Deputies emphasize that in *Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d 582, 588, the Supreme Court overruled *Hurst* on grounds there was no actual conflict between state zoning statutes and the constitutional provisions guaranteeing the right of initiative action. (18 Cal.3d at p. 596.) It specifically noted that *Hurst* erred in distinguishing *Dwyer* on the ground that *Dwyer* involved a referendum on a zoning ordinance. *Associated Home Builders* then reiterated the dicta from *Dwyer* that " 'if the right of referendum can be invoked, the corollary right to initiate legislation must be conceded to exist.' [Citation.]" (18 Cal.3d at p. 595.) As we explained, this assumption lacks foundation.

Three recent California Supreme Court decisions acknowledge another limitation on the initiative and referendum power. "In matters of statewide concern, the state may if it chooses preempt the entire field to the exclusion of all local control. If the state chooses instead to grant some measure of local control and autonomy, it has authority to impose procedural restrictions on the exercise of the power granted, including the authority to bar the exercise of the initiative and referendum." (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 511 [247 Cal.Rptr. 362, 754 P.2d 708]; see also *DeVita* v. *County of Napa* (1995) 9 Cal.4th 763, 776 [38 Cal.Rptr.2d

*699, 889 P.2d 1019]; and Voters for Responsible Retirement* v. *Board of Supervisors, supra,* 8 Cal.4th at p. 779.) If the Legislature may bar local initiatives in matters of statewide concern, we assume the People may do so by way of constitutional amendment. We also conclude the process through which supervisor salaries are established is a matter of statewide concern. Indeed, it was handled by the Legislature until 1970. (*Voters for Responsible Retirement* v. *Board of Supervisors, supra,* 8 Cal.4th at p. 772.) Although the argument in favor of Proposition 12 emphasized the importance of "home rule" in the process of setting compensation for supervisors (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec., *supra,* argument in favor of Prop. 12, pp. 20-21), the people of the entire state are legitimately concerned that local government not be held hostage to competing economic interests in the salary-setting debate.

Also missing from the Deputies' analysis is an acknowledgment of the different purposes of the referendum and initiative. Both reserved powers allow local as well as statewide voters to take legislative action without the aid or interference of their elected officials. (Cal. Const., art. II, § 11; see *AFL-CIO* v. *Deukmejian* (1989) 212 Cal.App.3d 425, 430, 441 [260 Cal.Rptr. 479].) However, as its name suggests, the initiative allows voters to *propose* new legislation. (Cal. Const., art. II, § 8.) In contrast, the referendum permits voters to *reject* legislation that has already been adopted. (Cal. Const., art. II, § 9.)

*Meldrim* clearly recognized these differences. Under the process envisioned by article XI, section 1(b), "[t]he members of the governing body can inform themselves of comparable salaries in other counties or governmental units and also will be knowledgeable in the matter of the hours required for the work and so forth. Presumably they will act with appreciation that the voters may by referendum reject their decision. ([Former] Elec. Code, §§ 3752, 3753.) It is to be observed that in 1971 the Legislature enlarged the time for referendum in respect of salaries of the governing body from the 30 days which applies generally, to 60 days. ([Former] Elec. Code, § 3751.5.) [¶] Once passed, an initiative measure (unless it made allowance of [*sic*] amendment or repeal) would freeze salaries until a petition to raise them were drafted, signed by the requisite percentage of voters and adopted at an election. The Legislature, in proposing the constitutional amendment, may have regarded such inflexibility to be contrary to the public welfare." (*Meldrim, supra,* 57 Cal.App.3d at p. 344.) We therefore join *Meldrim* in rejecting the suggestion the initiative power is corollary to the referendum power in all circumstances.

## DISPOSITION

The judgment is affirmed.

Davis, Acting P. J., and Nicholson, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 12, 1999. Mosk, J., was of the opinion that the petition should be granted.