[No. B196583. Second Dist., Div. Six. Oct. 20, 2008.]

MONTE L. WIDDERS, as City Attorney, etc., Plaintiff and Appellant, v. JEFF B. FURCHTENICHT, Defendant and Appellant.

## Counsel

Myers, Widders, Gibson, Jones & Schneider, Katherine E. Stone, J. Roger Myers and Nancy D. Hartzler for Plaintiff and Appellant.

ACLU Foundation of Southern California, Peter J. Eliasberg; Mitchell Silberberg & Knupp and Michael E. Chait for Defendant and Appellant.

Kirkland & Ellis, Robyn Bladow, Pantea Yashar and Shaun Paisley for Initiative & Referendum Institute as Amicus Curiae on behalf of Defenant and Appellant.

## Opinion

**PERREN, J.**—Jeff B. Furchtenicht, an attorney who resides in Ojai, submits two ballot initiative measures that direct the city council to exercise its "informed judgment" to craft and adopt laws relating to chain stores and affordable housing. Monte L. Widders, Ojai's City Attorney, informs Furchtenicht that the measures are an improper exercise of the initiative power conferred by the California Constitution because they do not propose actual legislation. After Furchtenicht declines to withdraw the measures, Widders seeks a judicial declaration relieving him of his statutory duty to prepare ballot titles and summaries.[1] The trial court sustains Furchtenicht's demurrer on the ground that the action was not filed within the 15-day period for Widders's compliance with the applicable law, yet also finds that Widders had no duty to comply with that law.

We conclude that the action was timely filed. While we recognize the strong public policy in favor of putting initiative measures before the electorate, that policy is not advanced where, as here, the proposed measures are plainly unconstitutional on their face. We further conclude that the action

---

[1] (Elec. Code, § 9203, subd. (a).) All further statutory references are to the Elections Code unless stated otherwise.

does not qualify as a SLAPP[2] suit because Widders demonstrated that he is entitled to judgment in his favor as a matter of law. Accordingly, we shall reverse the sustaining of the demurrer, affirm denial of Furchtenicht's anti-SLAPP motion, and direct the trial court to enter judgment in favor of Widders.

## FACTS AND PROCEDURAL HISTORY

On August 21, 2006, Furchtenicht submitted two ballot initiative measures to the city clerk along with notices of intent to circulate petitions and requests for ballot titles and summaries.[3] One of the proposed measures directs the city council to "urgently consider and take measures to," among other things, "prohibit or deter, to the extent possible, further encroachment of national chains and franchise operations within the City limits . . . ." The other essentially orders the council to "urgently consider and take measures to address affordability of housing within the City of Ojai." Instead of proposing actual legislation, the measures merely direct the council to exercise its "informed judgment" to enact laws that will accomplish the stated goals. Both measures provide that "[i]f this ordinance is not adopted by the City Council, the undersigned request that this ordinance be submitted immediately to a vote of the people at the general election scheduled for November 7, 2006, or, failing that, at a special election." The measures, however, were submitted too late to qualify for the general election.[4]

In accordance with section 9203, the materials were forwarded to Widders.[5] On September 1, 2006, Widders informed Furchtenicht by letter that he would not be preparing ballot titles and summaries because the measures "constitute an invalid attempt to exercise the initiative power

---

[2] (Code Civ. Proc., § 425.16.) SLAPP is an acronym for strategic lawsuit against public participation.

[3] Copies of the measures are attached as an appendix to this opinion.

[4] Furchtenicht submitted his measures to the city clerk 78 days before the general election. Pursuant to section 1405, an initiative measure cannot be submitted to the voters less than 88 days after the legislative body declines to adopt it, which occurs up to 30 days after the petitions have been circulated and returned with the requisite number of signatures. (See also §§ 9208, 9211, 9212, 9214, 9215.)

[5] Section 9203 provides in pertinent part: "(a) Any person who is interested in any proposed measure shall file a copy of the proposed measure with the elections official with a request that a ballot title and summary be prepared. . . . The elections official shall immediately transmit a copy of the proposed measure to the city attorney. Within 15 days after the proposed measure is filed, the city attorney shall provide and return to the city elections official a ballot title for and summary of the proposed measure. The ballot title may differ from any other title of the proposed measure and shall express in 500 words or less the purpose of the proposed measure. In providing the ballot title, the city attorney shall give a true and impartial statement of the purpose of the proposed measure in such language that the ballot title shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure."

pursuant to California Constitution, Article [II], Section 8 because they do not directly enact an ordinance or a statute." Widders explained that the measures were an invalid attempt to enact "indirect" legislation, as contemplated by *Marblehead v. City of San Clemente* (1991) 226 Cal.App.3d 1504 [277 Cal.Rptr. 550] (*Marblehead*). Widders suggested that Furchtenicht withdraw the measures and resubmit them in proper substantive form. Widders also stated that he would "be forced to seek declaratory relief" from his duty to comply with section 9203 if the measures were not withdrawn by September 15, 2006.

On September 4, Furchtenicht sent an e-mail asking Widders to "provide some authority supporting a city attorney refusing to timely prepare [a] ballot title and summary on the basis . . . [Widders] ha[s] asserted . . . ." On September 6, Widders responded by letter and attached a copy of the opinion in *Jahr v. Casebeer* (1999) 70 Cal.App.4th 1250 [83 Cal.Rptr.2d 172] (*Jahr*). In a September 11 e-mail, Furchtenicht rejected Widders's proffered authority and suggested: "Instead of litigating, why don't we have the affordability and chains vs. independents issues put on successive City Council agendas, with a presentation by [city manager] Mr. Kersnar outlining options and making recommendations?" In a subsequent e-mail, Furchtenicht stated that he would withdraw the measures only if the city council complied with this demand.

There was no further correspondence between the parties, and the measures were never withdrawn. On September 25, 2006, Widders filed an action for declaratory relief under Code of Civil Procedure section 1060, seeking declarations (1) that the proposed initiative measures are facially unconstitutional; (2) that ballot titles and summaries "would be misleading to the electorate"; (3) "that no additional public funds should be expended to process the proposed measures"; and (4) that he be relieved of any duty to comply with section 9203. Widders also moved for a temporary stay of his duty to comply with the statute, and asserted that the 15-day period for his compliance had passed due to his "attempts to avoid involving judicial resources by attempting to meet and confer with defendant . . . ."

Furchtenicht was served with a copy of the first amended complaint and the motion for a temporary stay on October 10, 2006. On October 12, he filed a combined demurrer, anti-SLAPP motion, and opposition to the stay. The demurrer contended that the complaint failed to state a cause of action as a matter of law because (1) Furchtenicht did not bring or threaten to bring an action to compel Widders to comply with section 9203; (2) the relief sought was not necessary or proper; (3) the court lacked jurisdiction to grant the requested relief because Widders failed to file his action within the 15-day period for his compliance with section 9203; and (4) courts have not recognized any right to "prepetition" review of ballot initiatives. The anti-SLAPP

motion argued that the grounds for sustaining the demurrer precluded Widders from establishing a probability of succeeding on the merits of his claim. Furchtenicht opposed the motion for a temporary stay of Widders's duty to comply with section 9203 solely on the ground that "Plaintiff has already completed all the acts constituting a breach of his duty under the Elections Code. The fifteen day period has passed. This court cannot retroactively through the alchemy of a stay resurrect it."

The trial court granted Widders's motion for a temporary stay on October 26, 2006. On November 29, the court issued its order sustaining the demurrer without leave to amend and denying the anti-SLAPP motion. The court sustained the demurrer on the ground that Widders did not file suit within 15 days of his receipt of the request for ballot titles and summaries and Furchtenicht had not brought an action to compel Widders's compliance with the request. The court also found, however, that "Mr. Widders was well within his official duties to deny Mr. Furchtenicht's request to title and summarize the two initiatives." In denying the anti-SLAPP motion, the court reasoned in part that if "Mr. Widders had brought this action within 15 days the court might be compelled under *Jahr* to deny the Demurrer and proceed with the lawsuit. . . . The narrowness of this ruling is that the action was not brought within the 15 days and Mr. Widders has no legal action pending asking him to do anything else."

## DISCUSSION

### I.

### *Requests for Judicial Notice; Mootness*

While the appeal and cross-appeal were pending, Widders requested judicial notice of documents purporting to reflect that the city has enacted measures to implement the matters addressed in Furchtenicht's proposed initiative measures. Widders asserts that this information might render the case moot. We conclude otherwise. As we shall explain, Widders has an ongoing duty to comply with section 9203 until either Furchtenicht withdraws the initiative measures or the court issues a declaration relieving Widders of his duty. Accordingly, Widders's requests for judicial notice filed on September 21, 2007, and December 20, 2007, are denied.

## II.

### Demurrer

### A.

### Standard of Review

The sustaining of a demurrer on a claim for declaratory relief is generally reviewed for an abuse of discretion. (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 433 [121 Cal.Rptr.2d 844, 49 P.3d 194] (*Filarsky*).) Our review is de novo where the relevant facts are essentially undisputed and the issue involves statutory interpretation. (*AICCO, Inc. v. Insurance Co. of North America* (2001) 90 Cal.App.4th 579, 590 [109 Cal.Rptr.2d 359].) In ruling on a demurrer to a complaint for declaratory relief, doubts regarding the propriety of a declaratory judgment are generally resolved in favor of the plaintiff. (*Filarsky, supra*, at p. 433.)

### B.

### Section 9203

Section 9203 provides that a city attorney must prepare a ballot title and summary for an initiative measure within 15 days of receipt. In undertaking to prepare ballot titles and summaries for Furchtenicht's proposed measures, Widders concluded that they were beyond the scope of the initiative power conferred by article II, section 8 of the California Constitution because they do not propose legislation. Accordingly, he filed an action seeking declarations that the measures were unconstitutional and relieving him of his duty to prepare ballot titles and summaries pursuant to section 9203. He also moved for a temporary stay of his duty to comply with the statute. The same procedure was employed in *Jahr*, although the plaintiff in that case apparently filed her action within 15 days of receiving the request to prepare a ballot title and summary. (*Jahr, supra*, 70 Cal.App.4th at p. 1253.)[6] While Widders filed suit 20 days after the statutory time for his compliance had passed, he explained that the delay was attributed to his efforts to avoid litigation.

---

[6] The plaintiff sought relief from her duty as county counsel to prepare a ballot title and summary for a proposed countywide measure. The corresponding statute that relates to county counsel's duty in this regard (§ 9105, subd. (a)) is essentially identical to section 9203, subdivision (a). The opinion states that "County Counsel immediately filed an action in the superior court seeking a declaration that the proposed initiative was unconstitutional. She also sought relief from the duty to prepare a title and summary. The court granted County Counsel's request for a stay pending hearing on the merits." (*Jahr, supra*, 70 Cal.App.4th at p. 1253.)

The trial court nevertheless sustained Furchtenicht's demurrer on the ground that Widders had filed suit too late. We agree with Widders that this ruling was erroneous. There is simply no authority for the proposition that the 15-day time period referred to in section 9203 was intended to act as a statute of limitations on a city attorney's right to seek judicial relief from his or her duty to comply with the statute.

Furchtenicht's argument to the contrary is based on a misreading of *Schmitz v. Younger* (1978) 21 Cal.3d 90 [145 Cal.Rptr. 517, 577 P.2d 652] (*Schmitz*). In *Schmitz*, the proponent of a ballot initiative petitioned for a writ of mandate compelling the Attorney General to prepare a ballot title and summary in accordance with his duties under former sections 3502 and 3503 (now § 9004). The Attorney General had refused to act on the ground that the proposed measure violated the "one subject" rule of the California Constitution.[7] The court held that "[t]he duty of the Attorney General to prepare title and summary for a proposed initiative measure is a ministerial one and mandate will lie to compel him to act when the proposal is in proper form and complies with statutory and constitutional procedural requirements. [Citation.]" (*Schmitz, supra,* at pp. 92–93.) The court reasoned: "The single subject requirement of article II, section 8, subdivision (d), involves difficult legal questions that only a court may resolve. [Citation.] We are satisfied that a claim of violation of subdivision (d) is not merely a formal one, but is based on the effects of the contents of the proposed measure. *Absent judicial authorization,* the Attorney General may not urge violation of the single subject requirement to justify refusal to title and prepare summary of a proposed measure. [¶] *This does not mean that the Attorney General may not challenge the validity of the proposed measure by timely and appropriate legal action.* We hold only that without prior judicial authorization he may not delay or impede the initiative process while claims of the measure's invalidity are determined. Petitioner is entitled to have his proposal titled and summarized so that he may commence seeking signatures to qualify it for the ballot." (*Id.* at p. 93, italics added.) In so holding, the court "express[ed] no view as to the merits of the claim that the proposed measure concerns more than one subject." (*Ibid.*)

According to Furchtenicht, the reference in *Schmitz* to "prior judicial authorization" and the court's refusal to consider the merits of the Attorney General's constitutional claim compels the conclusion that any action seeking relief from the duty to prepare ballot titles and summaries cannot be brought after the statutory time period to comply with the duty has passed. In other words, Furchtenicht essentially asserts that Widders's claim would have been

[7] Article II, section 8, subdivision (d) of the California Constitution provides that "[a]n initiative measure embracing more than one subject may not be submitted to the electors or have any effect."

justiciable only if, instead of attempting to explain the invalidity of the proposed initiatives and giving Furchtenicht the opportunity to withdraw them, Widders had simply gone to court and filed suit immediately.

■ Nothing in *Schmitz* can be construed to compel such a result. Furchtenicht overlooks the line of cases recognizing that government entities and officials charged with failing to perform ministerial duties under the Elections Code may assert invalidity of the initiative measure as a defense in actions brought to compel performance of the duty after the statutory period for compliance has passed. (See *Farley v. Healey* (1967) 67 Cal.2d 325, 327–328 [62 Cal.Rptr. 26, 431 P.2d 650]; *Save Stanislaus Area Farm Economy v. Board of Supervisors* (1993) 13 Cal.App.4th 141, 149 [16 Cal.Rptr.2d 408]; *Citizens for Responsible Behavior v. Superior Court* (1991) 1 Cal.App.4th 1013, 1021 [2 Cal.Rptr.2d 648]; *deBottari v. City Council* (1985) 171 Cal.App.3d 1204, 1209 [217 Cal.Rptr. 790]; *Citizens Against a New Jail v. Board of Supervisors* (1976) 63 Cal.App.3d 559, 561 [134 Cal.Rptr. 36]; *Gayle v. Hamm* (1972) 25 Cal.App.3d 250, 254–257 [101 Cal.Rptr. 628].) In those circumstances, the refusal to act "may be retroactively validated by a judicial declaration that the measure should not be submitted to the voters." (*Citizens for Responsible Behavior, supra*, at p. 1021.) "[E]ven if the local entity usurps the judicial power in this respect, it remains appropriate for the courts to determine whether the result was correct." (*Ibid.*) There is no legal distinction where, as here, the official charged with the ministerial duty comes to court of his own accord seeking judicial authorization for his decision, and the claim is brought within a reasonable period of time after it became clear that attempts to avoid litigation had failed. (See *City of San Diego v. Dunkl* (2001) 86 Cal.App.4th 384, 398 [103 Cal.Rptr.2d 269] (*Dunkl*) [city's statutory 20-day period preceding signature-gathering process was not a deadline for filing declaratory relief action; plaintiffs acted "with reasonable promptness" in filing suit six weeks after process of collecting signatures began].)[8]

Widders also sought "prior judicial authorization" for his decision, as contemplated by *Schmitz*. Notwithstanding Furchtenicht's repeated insistence that Widders "unilaterally" refused to comply with section 9203, Widders never purported to have the authority to refuse to act without judicial authorization. Rather, he made it clear from the outset that he would have no choice but to seek such authorization if Furchtenicht did not withdraw his request for ballot titles and summaries. Widders also sought and was granted

---

[8] For the first time in his reply brief, Furchtenicht cites *Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055 [17 Cal.Rptr.3d 225, 95 P.3d 459], for the proposition that the trial court had no power to issue a declaration relieving Widders of his duty to comply with section 9203. Because Furchtenicht did not raise this argument in his opening brief, it is waived. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [60 Cal.Rptr.2d 770].) In any event, the case is inapposite.

a stay of his duty to comply with the statute after Furchtenicht essentially failed to oppose the request. Accordingly, *Schmitz* offers no support for Furchtenicht's assertion that Widders waited too long to file suit.

## C.

### *Ripeness*

In sustaining the demurrer, the trial court also concluded that the declaratory relief Widders sought was not "necessary or proper" as contemplated by Code of Civil Procedure section 1061, because his claim was not ripe for adjudication. The court reasoned that the 15-day period for Widders's compliance with section 9203 had passed and "Mr. Furchtenicht brought no action requesting Mr. Widders do anything more." Widders contends that his claim was ripe notwithstanding these circumstances. We agree.

■ For obvious reasons, the obligation to perform a ministerial duty under the Elections Code remains " '. . . even where performance is beyond the statutory time frame.' . . ." (*MHC Financing Limited Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1383–1384 [23 Cal.Rptr.3d 622] (*MHC Financing*); see *Native American Sacred Site & Environmental Protection Assn. v. City of San Juan Capistrano* (2004) 120 Cal.App.4th 961, 966–967 [16 Cal.Rptr.3d 146].) Widders therefore has an ongoing duty to address Furchtenicht's request for ballot titles and summaries.

Moreover, Widders did not have to wait for Furchtenicht to sue him in order to obtain judicial relief from that duty. Furchtenicht's argument to the contrary is based on two cases involving the special statutory procedures for judicial review of requests for the disclosure of documents under the California Public Records Act (CPRA) (Gov. Code, §§ 6258, 6259). (*Filarsky, supra*, 28 Cal.4th at pp. 432–433; *City of Santa Rosa v. Press Democrat* (1986) 187 Cal.App.3d 1315, 1321–1323 [232 Cal.Rptr. 445].) Unlike the CPRA, there is no special statutory review procedure at issue here. Widders cannot forego his duty to comply with section 9203 without judicial authorization (*Schmitz, supra*, 21 Cal.3d at pp. 92–93), and that duty remains until the court declares otherwise or Furchtenicht withdraws his request.

Moreover, Furchtenicht as the proponent of the initiative is properly named as a defendant in the action. (See *Dunkl, supra*, 86 Cal.App.4th at p. 397.) Because the case for declaratory relief was plainly made, the court erred in sustaining the demurrer on the ground that Furchtenicht did not file his own lawsuit.

## D.

### *"Prepetition" Review*

Furchtenicht, joined by amicus curiae Initiative & Referendum Institute, also challenges the propriety of allowing judicial review at what he labels the "prepetition" stage of the initiative process, i.e., before an initiative petition has been circulated for signatures. Because the trial court did not address this argument in its order sustaining the demurrer, and emphasized that its ruling was based on the "narrow time grounds" that Widders filed his action too *late*, the court implicitly considered and rejected the claim that the action was filed too *soon*.

■ In any event, Furchtenicht fails to establish that "prepetition" review of his initiative measures is constitutionally proscribed. As he acknowledges, our Supreme Court has recognized that the governmental official responsible for the duty of preparing ballot titles and summaries may seek judicial relief from that duty. (*Schmitz, supra,* 21 Cal.3d at p. 93.) We are bound by that decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Moreover, Furchtenicht had no constitutionally protected right to place his initiatives on the ballot if they were invalid. (See, e.g., *Dunkl, supra,* 86 Cal.App.4th at p. 389.) While he asserts that he had a constitutionally protected right to circulate petitions for those initiatives, our Supreme Court has recognized there is no value "in putting before the people a measure which they have no power to enact." (*American Federation of Labor v. Eu* (1984) 36 Cal.3d 687, 697 [206 Cal.Rptr. 89, 686 P.2d 609].) ■ An initiative is "put[] before the people" (*ibid.*) when they are asked to sign a petition to place it on the ballot, and the people who sign the petition reasonably presume that the measure will be on the ballot if enough signatures are gathered. "[W]hile the right of free speech is one of the most precious rights to citizens of a free and open society, it is not without limit when the state Constitution provides it with a special forum for an initiative process in which voters are asked to sign a petition which ultimately may impact the community." (*San Francisco Forty-Niners v. Nishioka* (1999) 75 Cal.App.4th 637, 647 [89 Cal.Rptr.2d 388]; see also *City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582, 1592 [66 Cal.Rptr.3d 862] [rejecting initiative proponent's contention that he had "an unfettered right to circulate a petition and to present it to the sovereign" because "there is no constitutional right to place an *invalid* initiative on the ballot"].)[9]

---

[9] Furchtenicht claims that "[i]t is only in the rarest of cases, where there is the threat of *immediate* and *severe* financial ramifications and the possibility of *personal liability* that courts have found sufficient hardship to justify judicial review prior to gathering the requisite number of signatures required to qualify an initiative for the ballot." The single case he cites for that proposition does not so hold. Rather, the court in that case "reiterate[d] the well-established

■ Furchtenicht also complains that Widders's suit was filed "at the very beginning of the initiative process, when the possibility of the initiative qualifying and being filed with the city was speculative at best, and long before the city would even possibly face any affirmative duty to take anything more than *de minimis* action." He also asserts that "[t]he only fiscal cost at the early stages of the statutory framework is the *de minimis* cost associated with the actual preparation of a ballot title and summary." We are not persuaded. Fiscal costs are not the only relevant consideration. "Frequently, the heated rhetoric of an election campaign may open permanent rifts in a community. . . . That the people's right to directly legislate through the initiative process is to be respected and cherished does not require the useless expenditure of money and creation of emotional community divisions concerning a measure which is for any reason legally invalid." (*Citizens for Responsible Behavior v. Superior Court, supra*, 1 Cal.App.4th at p. 1023, fn. omitted.) The circulation of a petition, particularly in a small town, can invoke the same level of "heated rhetoric" capable of creating "permanent rifts in a community" that a full-blown election campaign can. (*Ibid.*)

■ The presentation of invalid ballot measures for circulation and collection of signatures may also serve to undermine public confidence in the process. One of the fundamental purposes of the ballot title and summary is "to reduce the risk that voters were misled when [they signed] the petition . . . ." (*MHC Financing, supra*, 125 Cal.App.4th at p. 1389.) "The ballot title and summary 'must reasonably inform the voter of the character and real purpose of the proposed measure.' [Citation.]" (*Lungren v. Superior Court* (1996) 48 Cal.App.4th 435, 440 [55 Cal.Rptr.2d 690].) In moving for a temporary stay of his duty to comply with section 9203, Widders asserted that "[g]iven the defective nature of these two proposed initiatives, there exists a genuine concern that the mere availability of a ballot title and summary for the petition—a petition bearing the imprimatur of the City Attorney—would effectively conceal the fatal flaws of the proposed measures, thus misleading the electors." This statement illustrates the reality that the duty to prepare ballot titles and summaries, although characterized as merely ministerial, requires the exercise of professional skills and judgment. Widders asserted that he could not conceive of a ballot title and summary that would not be misleading to the voters. In light of this concern, it was appropriate for him to seek judicial guidance on how to proceed.

nature of the rule that it is proper to conduct preelection review of a claim that a proposed measure may not properly be submitted to the voters because, for example, the measure is not appropriately legislative in character. [Citation.]" (*Dunkl, supra*, 86 Cal.App.4th at p. 394.) While Furchtenicht subsequently refers to the petitioners' contention below that "the existence of the proposed initiative was jeopardizing funding for the ballpark project . . ." (*id.* at p. 392), nothing in the opinion indicates that this purported consequence played any part in the court's conclusion that preelection review was appropriate.

■ While Furchtenicht acknowledges that his measures were submitted too late to qualify for the general election held on November 7, 2006, he argued that if Widders had prepared the ballot titles and summaries in a timely fashion "the initiatives would have been presented to the City Council for adoption or rejection prior to the November 7 election, and the voters of the City of Ojai could have had the opportunity to consider their elected representatives' votes on adoption or rejection in the upcoming election." Furchtenicht fails to identify any constitutionally protected right to exploit the initiative process for such a purpose. The statutory and constitutional right to petition contemplates the direct enactment of laws. It is not designed to compel candidates to take a position on a particular matter so that the electorate may determine whom it wishes to favor with its vote. As our Supreme Court has observed, "an initiative which seeks to do something other than enact a statute—which seeks to render an administrative decision, adjudicate a dispute, or declare by resolution the views of the resolving body—is not within the initiative power reserved by the people." (*American Federation of Labor v. Eu, supra*, 36 Cal.3d at p. 714.) The initiative process "is not a public opinion poll. It is a method of enacting legislation, and if the proposed measure does not enact legislation, or if it seeks to compel legislative action which the electorate has no power to compel, it should not be on the ballot." (*Id.* at p. 695.)

Furchtenicht also complains that Widders's refusal to prepare ballot titles and summaries prevented him from engaging in the good faith bargaining process contemplated by section 9604, subdivision (a).[10] Nothing in that section, however, identifies any right to utilize the initiative process for a ballot measure that the voters cannot enact. Moreover, Furchtenicht made no meaningful effort to oppose Widders's request for a stay of his duty to comply with section 9203. Had he done so, the court may have denied the stay and ordered Widders to comply with the statute while the underlying issues were being litigated. Instead, Furchtenicht simply argued that "[t]here is nothing to be stayed" because "[t]his court cannot retroactively through the alchemy of a stay resurrect" the 15-day period within which Widders was supposed to have complied with the statute. Furchtenicht therefore cannot be heard to complain that Widders prevented him from proceeding.

Furchtenicht also laments that "even the mere threat of costly litigation resulting from the act of filing a request for the city to prepare ballot title and summary will deter people from engaging in their protected right to initiative.

---

[10] Section 9604 provides: "(a) Notwithstanding any other provision of law, any person may engage in good faith bargaining between competing interests to secure legislative approval of matters embraced in a state or local initiative or referendum measure, and the proponents may, as a result of these negotiations, withdraw the measure at any time before filing the petition with the appropriate elections official."

Bringing lawsuits against petitioners at such an early stage, when they are testing the waters of public support, would certainly cause the average person significant concern, and discourage them from exercising their constitutional rights." He then refers us to declarations from three Ojai residents who claim that, as a result of this lawsuit, they and others are afraid to speak out for fear of being sued.

These arguments and assertions fail to acknowledge the particular context in which this case arose. Widders gave an objective assessment of Furchtenicht's initiatives pursuant to his role as city attorney. He did not express any views regarding the subject matter, and gave no indication whether he personally or professionally disagreed with the stated objectives. He merely conveyed his informed conclusion that the measures were invalid. Instead of accepting Widders's suggestion that he attempt to correct the deficiencies, Furchtenicht chose to view Widders as an adversary and challenged his legal conclusions. When given the option of withdrawing the initiatives or facing litigation, Furchtenicht effectively chose the latter. Nothing about this scenario conveys the impression that citizens will be sued for merely speaking out on an issue or otherwise participating in the local political process. Simply put, none of Furchtenicht's contentions undermine the conclusion that judicial intervention in this case was necessary, proper, and timely.

## III.

### The Anti-SLAPP Motion and Merits of Widders's Claim

The anti-SLAPP statute, as codified in Code of Civil Procedure section 425.16, "provides a mechanism for quickly identifying and eliminating civil actions filed for the purpose of chilling the exercise of free speech." (*City of Riverside v. Stansbury, supra,* 155 Cal.App.4th at p. 1588.) "Analysis of an anti-SLAPP motion requires a two-step process. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1036 [73 Cal.Rptr.3d 268], quoting *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) Our review of these legal determinations is de novo. (*California Back Specialist*s, at p. 1036.)

Furchtenicht contends the trial court erred in denying his anti-SLAPP motion on the ground that he had failed to meet his burden of proving that

Widders's lawsuit arose from acts undertaken in furtherance of his constitutionally protected petitioning activity, as contemplated by Code of Civil Procedure section 425.16, subdivision (b)(1). We need not address this argument because the trial court correctly found that Widders met his burden of showing a probability of prevailing on the merits of his claim. Indeed, the trial court's finding on this issue of law is sufficient to warrant judgment in Widders's favor.

In opposing Furchtenicht's anti-SLAPP motion on the second prong, Widders argued that Furchtenicht's proposed initiatives were facially unconstitutional because they do not propose actual legislation or purport to enact a statute, as required by article II, section 8, subdivision (a) of the California Constitution. Furchtenicht made no effort to challenge this showing. Instead, he merely asserted that Widders could not prevail on the merits of his claim because he filed his action either too late or too early.

In issuing its ruling, the trial court found that Widders had acted "well within his official duties" in refusing to comply with section 9203. In so holding, the court did not merely find that Widders had demonstrated *a probability* of prevailing on his claim: the court essentially found that Widders *would have* prevailed on his claim as a matter of law had the demurrer not been sustained "on narrow time grounds." Furchtenicht does not challenge this finding on appeal. Instead, he simply reiterates his assertions that Widders's action was untimely.

We agree with the trial court's implicit finding that Furchtenicht's proposed initiative measures were an improper exercise of the electorate's initiative power. "The initiative and referendum are powers reserved by the people and liberally construed in favor of their exercise. [Citations.] But the electorate's use of these powers is not unlimited. 'Even under the most liberal interpretation, however, the reserved powers of initiative and referendum do not encompass all possible actions of a legislative body. Those powers are limited . . . to the adoption or rejection of "statutes." . . .' [Citations.]" (*Marblehead, supra*, 226 Cal.App.3d at p. 1509; see also *American Federation of Labor v. Eu, supra*, 36 Cal.3d at p. 708.)

The initiative measures at issue here do not contain actual statutes or ordinances. Rather, they are in the nature of resolutions that declare policies without providing the specific laws to be enacted. As worthy as these policies may be, the measures are an improper exercise of the initiative power conferred by the California Constitution because they do not contain any actual legislation.

*Marblehead, supra*, 226 Cal.App.3d 1504, is instructive. In that case, the Court of Appeal invalidated a measure (Measure E) that directed the City

Counsel of San Clemente to amend the city's general plan to contain the " 'concepts' " addressed in the measure. (*Id.* at p. 1510, italics omitted.) The court reasoned: "Contrary to appellant's argument, Measure E does not directly amend San Clemente's general plan. In effect, it constitutes a resolution by the voters declaring that the city's general plan should be revised to reflect the '*concepts*' expressed in the measure. The actual amendment of the general plan is left to the city council." (*Ibid.*) The court added: "While it might be argued the electorate could amend a general plan and direct the city council to revise the city's zoning ordinances to comply with it, Measure E goes beyond that. It directs the city council to amend both the general plan and the zoning ordinances. This type of measure is not within the electorate's initiative power." (*Ibid.*)

Furchtenicht's initiative measures suffer the same infirmity. Instead of proposing actual legislation to be enacted, the measures merely state policies and direct the city council to enact unspecified laws pursuant to those policies. Neither measure purports to amend or revise any element of the city's general plan or municipal code. Because the initiative power is limited to the adoption or rejection of actual legislation, and Furchtenicht's proposed measures do not contain any such legislation, it was proper for Widders to seek and be granted relief from his duty to prepare ballot titles and summaries for those measures.

## CONCLUSION

In reaching our conclusion, we are mindful of "our solemn duty ' "to jealously guard" ' the initiative power, it being ' "one of the most precious rights of our democratic process." ' [Citation.]" (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 248 [149 Cal.Rptr. 239, 583 P.2d 1281].) But we guard this power with both sword and shield. We must not only protect against interference with its proper exercise, but must also strike down efforts to exploit the power for an improper purpose. Here, the government official entrusted to present the people with a clear and unbiased statement of two proposed initiatives has asked the court to relieve him of his duty to prepare ballot titles and summaries on the ground that the proposals are unconstitutional on their face. The proponent of those initiatives has made no effort to disabuse the court of this apparent truism. Moreover, he essentially declined to oppose the official's request to temporarily stay his duty while the constitutionality of the initiatives was being litigated, and made no effort to challenge the merits of the claim. Under the circumstances, it was proper for the court to proceed.

## DISPOSITION

The order sustaining Furchtenicht's demurrer to the complaint is reversed, and the order denying his anti-SLAPP motion is affirmed. On remand, the trial court shall enter judgment in favor of Widders. Costs on appeal are awarded to Widders.

Gilbert, P. J., and Coffee, J., concurred.

A petition for a rehearing was denied November 18, 2008, and the petition of appellant Jeff B. Furchtenicht for review by the Supreme Court was denied January 14, 2009, S168686. George, C. J., did not participate therein.

# APPENDIX

## TEXT OF INITIATIVE:

### "THE PEOPLE OF THE CITY OF OJAI DO ORDAIN AS FOLLOWS:

The City Council is hereby directed to urgently consider and take measures to:

(a) preserve, protect and encourage diverse, independent, owner-operated businesses within the City of Ojai's downtown core;

(b) prohibit or deter, to the extent possible, further encroachment of national chains and franchise operations within the City limits; and

(c) require, to the extent possible, that national chain and franchise operations that do locate within City limits identify, mitigate and compensate for negative impacts on town character, environment, traffic, wages, tourism, and other factors identified by the City Council.

The City Council is directed to consider all available alternatives, with special reference to ordinances and policies of other communities in the United States that have successfully kept national chains and franchises out or required such businesses to be responsible for the unique costs they impose.

Definition of terms used within this ordinance is to be determined in accordance with the informed judgment of the City Council.

If this ordinance is not adopted by the City Council, the undersigned request that this ordinance be submitted immediately to a vote of the people at the general election scheduled for November 7, 2006, or, failing that, at a special election."

SUBMITTED this 21 day of August, 2006.

JEFF B. FURCHTENICHT

APPENDIX A (1 of 4 pages)

## NOTICE OF INTENT TO CIRCULATE PETITION

NOTICE IS HEREBY GIVEN of intention to circulate a petition within the City of Ojai for the purpose of directing the City Council to urgently consider and take measures to address affordability of housing within the City of Ojai. The City Council is directed to consider and adopt such measures as will, in the City Council's informed judgment, accomplish the following:

1. Identify and preserve existing *de facto* low income housing stock, such as the cottages at Mallory Way;

2. Encourage renovation of existing structures in a manner consistent with past use in terms of size and structure, while limiting new development that displaces existing housing stock and is inconsistent with past use in terms of size, density, relative cost, structure and neighborhood impact;

3. Assist lower-income first-time home buyers who live, work and are raising families in Ojai, or who otherwise contribute to the quality of life in the City of Ojai, to purchase a home from existing housing stock here;

4. Implement renter protection that will at minimum protect tenants against rent increases above a certain percentage each year (to be determined by the City Council with reference to the incomes of Ojai's renter population, the rate of increase in such incomes, and the rates in effect in similar ordinances that have been successfully implemented in other California cities, among other factors deemed appropriate by the City Council), while protecting landlords' ability to ensure return on investment and recoup costs of property ownership;

5. Address issues of compliance with applicable mandates regarding affordable housing in ways that are consistent with the preservation of Ojai's unique, small town character and, to the extent permissible, do not require additional development; and

6. To the extent and in the manner deemed appropriate by the City Council, condition issuance of new building permits within the City of Ojai to meaningful requirements that applicants construct or contribute to the creation of affordable housing within the City of Ojai.

The City Council is expressly directed to consider that it is the sense of the people of Ojai that we cannot and should not build our way to affordable housing by new developments, but instead must primarily consider and adopt alternative measures that will make sufficient existing or renovated housing stock affordable for families with young children, educators, artists, artisans, and other working people whose talents and contributions are so vital to our community.

If this ordinance is not adopted by the City Council, the undersigned request that this ordinance be submitted immediately to a vote of the people at the general election scheduled for November 7, 2006, or, failing that, at a special election.

SUBMITTED this 21 day of August, 2006.

APPENDIX A (2 of 4 pages)

JEFF B. FURCHTENICHT

## TEXT OF INITIATIVE:

### "THE PEOPLE OF THE CITY OF OJAI DO ORDAIN AS FOLLOWS:

The City Council is hereby directed to urgently consider and take measures to address affordability of housing within the City of Ojai. The City Council is directed to consider and adopt such measures as will, in the City Council's informed judgment, accomplish the following:

1. Identify and preserve existing *de facto* low income housing stock, such as the cottages at Mallory Way;

2. Encourage renovation of existing structures in a manner consistent with past use in terms of size and structure, while limiting new development that displaces existing housing stock and is inconsistent with past use in terms of size, density, relative cost, structure and neighborhood impact;

3. Assist lower-income first-time home buyers who live, work and are raising families in Ojai, or who otherwise contribute to the quality of life in the City of Ojai, to purchase a home from existing housing stock here;

4. Implement renter protection that will at minimum protect tenants against rent increases above a certain percentage each year (to be determined by the City Council with reference to the incomes of Ojai's renter population, the rate of increase in such incomes, and the rates in effect in similar ordinances that have been successfully implemented in other California cities, among other factors deemed appropriate by the City Council), while protecting landlords' ability to ensure return on investment and recoup costs of property ownership;

5. Address issues of compliance with applicable mandates regarding affordable housing in ways that are consistent with the preservation of Ojai's unique, small town character and, to the extent permissible, do not require additional development; and

6. To the extent and in the manner deemed appropriate by the City Council, condition issuance of new building permits within the City of Ojai to meaningful requirements that applicants construct or contribute to the creation of affordable housing within the City of Ojai.

The City Council is expressly directed to consider that it is the sense of the people of Ojai that we cannot and should not build our way to affordable housing by new developments, but instead must primarily consider and adopt alternative measures that will make sufficient existing or renovated housing stock affordable for families with young children, educators, artists, artisans, and other working people whose talents and contributions are so vital to our community.

If this ordinance is not adopted by the City Council, the undersigned request that this ordinance be submitted immediately to a vote of the people at the general election scheduled for November 7, 2006, or, failing that, at a special election."

SUBMITTED this _21_ day of August, 2006.

JEFF B. FURCHTENICHT

### APPENDIX A (3 of 4 pages)

## TEXT OF INITIATIVE:

### "THE PEOPLE OF THE CITY OF OJAI DO ORDAIN AS FOLLOWS:

The City Council is hereby directed to urgently consider and take measures to:

(a) preserve, protect and encourage diverse, independent, owner-operated businesses within the City of Ojai's downtown core;

(b) prohibit or deter, to the extent possible, further encroachment of national chains and franchise operations within the City limits; and

(c) require, to the extent possible, that national chain and franchise operations that do locate within City limits identify, mitigate and compensate for negative impacts on town character, environment, traffic, wages, tourism, and other factors identified by the City Council.

The City Council is directed to consider all available alternatives, with special reference to ordinances and policies of other communities in the United States that have successfully kept national chains and franchises out or required such businesses to be responsible for the unique costs they impose.

Definition of terms used within this ordinance is to be determined in accordance with the informed judgment of the City Council.

If this ordinance is not adopted by the City Council, the undersigned request that this ordinance be submitted immediately to a vote of the people at the general election scheduled for November 7, 2006, or, failing that, at a special election."

SUBMITTED this 21 day of August, 2006.

JEFF B. FURCHTENICHT

## APPENDIX A (4 of 4 pages)