Filed 8/22/19

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| DAVID GATES,<br>    Plaintiff and Appellant; | E069998 |
| GAGE BRUCE,<br>    Plaintiff, Cross-defendant and Appellant, | (Super.Ct. Nos. CIVDS1723296 & CIVDS1722082) |
| v. | OPINION |
| MICHELLE BLAKEMORE,<br>    Defendant, Cross-complainant and Respondent; | |
| BOB PAGE, as Registrar of Voters, etc.,<br>    Defendant and Respondent. | |

MICHELLE BLAKEMORE,
        Plaintiff and Respondent,

v.

GAGE BRUCE et al.,
        Defendants and Appellants.

APPEAL from the Superior Court of San Bernardino County. David Cohn, Judge. Affirmed.

Clearview Law and Shannon Gallagher; The Red Brennan Group and Aaron D. Burden, for Appellants David Gates and Gage Bruce.

Michelle D. Blakemore, County Counsel, and Laura Crane, Deputy County Counsel, for Respondents Michelle Blakemore and Bob Page.

In this appeal, we affirm a judgment excusing county counsel for the County of San Bernardino (County) from the duty to prepare ballot titles and summaries for six proposed initiatives. This means that the initiatives will not get on the ballot. We hold that the trial court's preelection review of the initiatives was proper, and that the initiatives were invalid. Several of the initiatives intrude on areas that the California Constitution expressly reserves for the governing body of the County and thereby excludes from the initiative power of the electorate; several of them would restructure the County's government in a manner that would violate the Government Code.

## I. BACKGROUND

The judgment here resolved two consolidated lawsuits relating to a series of proposed initiatives.[1] In 2017, David Gates and Gage Bruce submitted to the San

---

[1] The proponents of the initiatives, David Gates and Gage Bruce, were defendants in the first of the two lawsuits (Superior Court case No. CIVDS1722082), a declaratory relief action brought by then-County Counsel Jean Rene Basle, who has since been replaced in that capacity by Michelle Blakemore. Gates and Bruce then filed a separate lawsuit seeking a writ of mandate (Superior Court case No. CIVDS1723296), and naming as defendants both county counsel and the Registrar of Voters Michael J. Scarpello. Both lawsuits related to the same two proposed initiatives. County counsel subsequently filed

*[footnote continued on next page]*

2

Bernardino County Registrar of Voters notices of intent to circulate for signatures with respect to nine initiatives. The initiatives were referred to county counsel for preparation of ballot titles and summaries. (See Elec. Code § 9105, subd. (a).) County counsel prepared ballot titles and summaries for two of the initiatives, and a third initiative was withdrawn. Litigation ensued with respect to the remaining six initiatives, which the parties have referred to as Initiatives 1, 2, 5, 6, 7, and 8.

Initiative 1 was entitled by its proponents "The San Bernardino County Fair Pay and Benefits Measure." Its stated purpose is "to couple pay and benefits for county employees to the average pay and benefits earned by employees working in the private sector in San Bernardino County." To that end, Initiative 1 would require the County to "use all legal means possible to ensure wages and benefits for County employees are equal to [and not in excess of] the average wages and benefits for the private sector." "Wages and benefits for sheriff deputies" are exempted from such a limitation, as are wages and benefits set by "any existing contracts or Memoranda of Understanding between the County and any represented County employee group." The benefits of County employees "who hold vested benefits under California law" are also exempted.

Initiative 2 was entitled by its proponents "The San Bernardino County Charter Accountability Measure." Its stated purpose is to "assure that the business of the County

<hr />

a cross-complaint in the writ matter seeking declaratory relief regarding four later-submitted proposed initiatives. The cross-complaint names only Bruce, not Gates, as a cross-defendant, because he alone submitted those four proposed initiatives; Bruce and Gates had jointly submitted the first two. In this appeal, both Gates and Bruce are appellants, and both Blakemore and Scarpello, in their respective official capacities, are respondents.

3

of San Bernardino is conducted in an open and responsible manner that is fiscally sound and that the Board of Supervisors through its Chair are held to account for the actions taken on behalf of the County." If enacted, it would make revisions to the County's charter and code of ordinances that can be grouped into four broad categories. One category is changes to the structure of the County government. The initiative would, among other things, eliminate the current chief executive officer position, providing instead that the chair of the board of supervisors shall be "the general executive agent of the Board." The chair would be assisted in this executive role by a newly created "County Administrative Officer." The chair's new responsibilities would include preparing, "in coordination with the County Administrative Officer and the County Auditor," the annual County budget. In performing this duty, the chair would be charged with reviewing "all departmental and agency requests and all items in the proposed budget . . . ."

A second category of revisions that would be made by Initiative 2 is a limitation on budget expenditures for board members. Specifically, the "total annual budget for each Member of the Board of Supervisors"—defined to include "all office operations . . . including staff member salaries, office equipment, rent, vehicle allowances, credit cards, health insurance, life insurance, leave and portable communication devices," but not to include the board member's own compensation—would not be permitted to "exceed five (5) times the annual compensation amount for each Member . . . ."

Third, Initiative 2 would limit the compensation of elected County officials. It provides that the "annual compensation (including salary and benefits)" of members of

4

the board of supervisors "shall be equal to, and shall never exceed, the median household income in San Bernardino County . . . ." The annual compensation of the chair of the board, as well as other "Elected County Officials" whose compensation is set by the board, would be limited to three times the median household income in San Bernardino County. Also, any new or reelected "elected official[s] serving San Bernardino County" would not receive any "retirement benefits that extend beyond the term of the office holder," and current elected officials would "retain any retirement benefits already accrued and vested while in office," but neither the County nor the official would make any further contributions once the current term of the official expires.

Finally, Initiative 2 would place restrictions—both maximums and minimums—on the number of certain County employees. It would limit "[t]he total number of county elected, appointed, or other public officials or employees paid by the County . . . [to] one county employee for every 108 residents in the County of San Bernardino." It would also require the County to "ensure the ratio of patrol deputies to 'citizens served'" be at least one deputy for every 1,398 residents, defining the term "'citizens served'" to mean "the population of the county in all areas where the County Sheriff provides primary law enforcement patrol duties, excluding cities/areas where the Sheriff provides primary law enforcement patrol duties via contract."

Initiative 5 was entitled by its proponent the "Cap on the Total Number of County Employees Initiative." In substance, it repeats one aspect of Initiative 2; Initiative 5 would limit the number of County employees to no more than one for "every 108 residents in the County of San Bernardino."

5

Initiative 6 was entitled by its proponent "Initiative to Ensure an Adequate Number of Sheriff Patrol Officers." In substance, it is similar to one aspect of Initiative 2; Initiative 6 would require the County to "ensure the ratio of patrol deputies to 'citizens served' remains at least one deputy for every 1,400 residents served." Like Initiative 2, it defines the term "'[c]itizens served'" to mean "the population of the county in all areas where the County Sheriff provides primary law enforcement patrol duties, excluding cities/areas where the Sheriff provides primary law enforcement patrol duties via contract."

Initiative 7 was entitled by its proponent "Initiative to Cap the Total Number of County Employees While Ensuring Sufficient Numbers of Patrol Officers." In substance, it is similar to a combination of Initiatives 5 and 6, as well as part of Initiative 2. If enacted, Initiative 7 would limit the number of County employees to no more than one for "every 108 residents in the County of San Bernardino." It also would require the County to "ensure the ratio of patrol deputies to 'citizens served' remains at least one deputy for every 1,480 residents served." Like Initiatives 2 and 6, it defines the term "'[c]itizens served'" to mean "the population of the county in all areas where the County Sheriff provides primary law enforcement patrol duties, excluding cities/areas where the Sheriff provides primary law enforcement patrol duties via contract."

Initiative 8 was entitled by its proponent "Initiative to Ensure Elected Officials are Directly Responsible for Supervision of the County." In substance, it would make the same changes to the structure of County government that are included in Initiative 2, discussed above, including expanding the duties of the chair of the board of supervisors,

6

eliminating the current chief executive officer position, and creating a new county administrative officer who would assist the chair.

Pursuant to a stipulation, the trial court addressed the parties' arguments regarding all six proposed initiatives in a single hearing on January 18, 2018. The trial court sided with county counsel, denying Gates and Bruce's writ petition and granting county counsel declaratory relief. The judgment, entered on February 1, 2018, excuses county counsel from her duty pursuant to section 9105, subdivision (a), to prepare a ballot title and summary for the initiatives on the ground that each is "invalid and may not be placed on the ballot."[2]

## II. DISCUSSION

Gates and Bruce contend that the trial court should not have engaged in any preelection review of the proposed initiatives, and also that, even if review were proper, the initiatives are not invalid. We disagree with both contentions and affirm the judgment.

First, the trial court did not err by addressing the merits of county counsel's preelection challenges to the proposed initiatives. It is "usually more appropriate to review constitutional and other challenges to ballot propositions or initiative measures after an election rather than to disrupt the electoral process by preventing the exercise of the people's franchise," but this is true only "in the absence of some clear showing of

---

[2] On February 15, 2018, this court summarily denied Gates and Bruce's petition for writ of mandate compelling an order that county counsel prepare ballot titles and summaries of the proposed initiatives. (*Gates v. Superior Court*, case No. E069895.)

7

invalidity." (*Brosnahan v. Eu* (1982) 31 Cal.3d 1, 4.) It is "well accepted that preelection review of ballot measures is appropriate where the validity of a proposal is in serious question, and where the matter can be resolved as a matter of law before unnecessary expenditures of time and effort have been placed into a futile election campaign." (*City of San Diego v. Dunkl* (2001) 86 Cal.App.4th 384, 389, citing *Senate of the State of Cal. v. Jones* (1999) 21 Cal.4th 1142, 1153.) It is proper for a city or county to initiate a declaratory relief action as a means of disputing, in a preelection challenge, the validity of an initiative. (*City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582, 1591, abrogated in part on another ground as stated in *Mission Springs Water Dist. v. Verjil* (2013) 218 Cal.App.4th 892, 899.) Alternatively, governmental officials charged with failing to perform their duties under the Elections Code may assert invalidity of the initiative measure as a defense in an action brought to compel performance of the duty. (*Widders v. Furchtenicht* (2008) 167 Cal.App.4th 769, 778.) Here, therefore, it was proper for county counsel to seek declaratory relief, and for the trial court to reach the merits of its contention that the proposed initiatives are invalid.

Moreover, the trial court correctly determined that, not only are there serious questions about the initiatives' validity, they are in fact invalid. For the reasons discussed below, Initiatives 1, 2, 5, 6, and 7 each exceed the initiative power of the electorate by intruding on budgetary matters that are exclusively within the authority of the board of supervisors. Initiative 8 (and the corresponding portion of Initiative 2 that it duplicates) would restructure the County's government in a manner that violates the Government Code.

8

"[T]he local electorate's right to initiative and referendum is guaranteed by the California Constitution, article II, section 11, and is generally co-extensive with the legislative power of the local governing body." (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 775.) Authority over certain matters, however, is delegated "exclusively to the governing body, thereby precluding initiative and referendum." (*Id.* at p. 776.)

The California Constitution expressly reserves for the "governing bodies" of charter counties[3] the authority to set the number of county employees, their duties, and their compensation. (Cal. Const., art. XI, § 4, subd. (f).[4]) Initiatives 1 and 2 would place limits on the board of supervisors' authority to set the compensation of certain County employees. Initiatives 2, 5, 6, and 7 would set limits—either minimums or maximums—on the number of certain types of County employees. And Initiatives 6 and 7 would mandate the duties that at least a certain number of County employees must perform. Each of these initiatives therefore would infringe on authority exclusively delegated to the board of supervisors by the California Constitution, so they are invalid.

Gates and Bruce emphasize that Initiatives 1, 2, 5, 6, and 7 do not set "any specific number of employees, the duties of those employees or compensation to be paid," but instead "merely set charter policy parameters within which the County will operate."

---

[3] San Bernardino became a charter county in 1913. (*Penrod v. County of San Bernardino* (2005) 126 Cal.App.4th 185, 190; Stats.1913, ch. 33.)

[4] "County charters shall provide for: [¶] . . . [¶] (f) The fixing and regulation by governing bodies, by ordinance, of the appointment and number of [employees], and for the prescribing and regulating by such bodies of the powers, duties, qualifications, and compensation of such persons, the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal." (Cal. Const., art. XI, § 4.)

9

This is, however, a distinction without a difference. The initiatives place limits by formula, even if not by specific numbers in the initiative. Gates and Bruce cite no authority in support of the notion that an initiative may limit or control the parameters within which the board of supervisors may exercise its discretion on matters that are exclusively vested in that body by the California Constitution, and we are aware of no such authority.

Initiative 8 (and the portion of Initiative 2 that it duplicates) is invalid for a different reason. The County Budget Act (Gov. Code § 29000 et seq.) codifies the procedures for preparing and managing county budgets. Under the County Budget Act, the board of supervisors must designate either the "administrative officer or auditor" to compile budget requests. (Gov. Code, § 29060.) The County Budget Act further requires that the board of supervisors designate the "administrative officer or auditor to review the budget requests and prepare a recommended budget." (Gov. Code, § 29061.) The administrative officer or auditor then must submit the recommended budget to the Board. (Gov. Code, § 29062.) Initiative 8 would require that the chair of the board of supervisors, rather than the administrative officer or auditor as designated by the board, perform these functions. Gates and Bruce assert that Initiative 8 "addresses the structure of government in a matter consistent with state law," but have offered no reasoned argument in support of that assertion by even attempting to address the apparent incompatibility with the County Budget Act.

In light of our conclusions above, we need not address the parties' arguments regarding other possible bases for finding the proposed initiatives invalid. Gates and Bruce have not demonstrated any error in the trial court's rulings.

## III.  DISPOSITION

The judgment is affirmed.  Respondents are awarded costs on appeal.

CERTIFIED FOR PUBLICATION


                                        RAPHAEL
                                                    J.

We concur:


RAMIREZ
                    P. J.

MENETREZ
                    J.